(No. 13969.—Reversed and remanded.)
THE PEOPLE *ex rel.* Edward J. Brundage, Attorney General,
Appellant, *vs.* FRANK S. RIGHEIMER *et al.* Appellees.

*Opinion filed June 22, 1921—Rehearing denied October 7, 1921.*

1. ELECTIONS—*county judge, State's attorney and county clerk
have no authority to decide questions as to nomination of judges.*
The act of 1917 for the nomination of candidates for judges (Laws
of 1917, p. 454,) takes from the county judge, State's attorney and
county clerk any authority they had under section 10 of the Ballot
act of 1891 to decide questions as to the nomination of judges of
the circuit and superior courts, as the act of 1917 requires the cer-
tificates of nomination of such judges to be filed with the Secre-
tary of State, and if there is any question as to the genuineness of
the certificates it is his duty to decide it.

2. JURISDICTION—*the jurisdiction of administrative or judicial
agency of State must be conferred by law.* Every administrative
agency of the State must find the source of its authority in the
statute conferring it and can only exercise the power conferred in
conformity with the statute, and even a court of general jurisdic-
tion has no power or authority to do any act or render any judg-
ment affecting persons or property unless the particular act or
judgment is brought within its jurisdiction according to law.

3. SAME—*officer required to receive and act upon a certificate
of nomination may determine its genuineness.* It is not essential
to the validity of an act for the nomination of candidates that ob-
jections or questions relating to a nomination shall be referred to
any judicial or administrative authority for a hearing and decision,
but, as in any other case where an officer is required to receive and
act upon a certificate, report or other paper, he has authority to
determine whether the paper is genuine and such as he is required
to receive and make the basis of his action.

FARMER, DUNCAN and THOMPSON, JJ., dissenting.

APPEAL from the Circuit Court of Cook county; the
Hon. F. R. DEYOUNG, Judge, presiding.

EDWARD J. BRUNDAGE, Attorney General, (FREDERICK
A. BROWN, of counsel,) for appellant.

SAMUEL A. ETTELSON, GEORGE F. BARRETT, CHESTER
E. CLEVELAND, GEORGE B. GILLESPIE, and ALFRED S. AUS-
TRIAN, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Edward J. Brundage, Attorney General of the State of Illinois, filed in the circuit court of Cook county an information in the nature of *quo warranto* against appellees, Frank S. Righeimer, county judge, Robert E. Crowe, State's attorney, and Robert M. Sweitzer, county clerk of Cook county, calling upon them to answer to the People by what warrant they claimed to exercise the right to determine objections or questions arising in the case of nominations of judges of the circuit court and superior court of Cook county. General demurrers to the amended information were filed, one by Frank S. Righeimer and Robert E. Crowe and the other by Robert M. Sweitzer, and the demurrers were sustained. The Attorney General having elected to stand by the amended information, it was dismissed and an appeal was allowed and prosecuted to this court.

The information alleges that the defendants claim the right to exercise the power and authority which is challenged by the information, under a provision of section 10 of an act entitled "An act to provide for the printing and distribution of ballots at public expense, and for the nomination of candidates for public offices, to regulate the manner of holding elections, and to enforce the secrecy of the ballot," in force July 1, 1891, (Laws of 1891, p. 108,) and denies that the provision confers such right or is in force with respect to nominations of judges of the circuit court and superior court of Cook county. In the printed briefs and arguments and in the argument at the bar the question whether section 10 violates provisions of the constitution by attempting to confer judicial functions upon a non-judicial body was argued by counsel, but if the provision of section 10 does not apply to, control or govern nominations for judges of the circuit and superior courts and is not in

force in respect to such nominations, the question whether it would be constitutional if it did so apply is immaterial in this controversy, and since that is the fact no consideration will be given to such arguments.

The act of 1891 of which section 10 is a part and the title of which is given above, provides for the printing and distribution of ballots at public expense and for the nomination of candidates for public office and is commonly called the Ballot act. It provides for nominations to office by a convention of delegates, caucus or meeting representing a political party as therein defined and for nominations by nomination papers signed by qualified voters. Section 7 as amended in 1905 contains this provision: "Certificates of nomination and nomination papers for the nomination of candidates for offices to be filled by the electors of the entire State, or any division or district greater than a county, shall be filed with the Secretary of State at least thirty days previous to the day of election for which the candidates are nominated. All other certificates for the nomination of candidates shall be filed with the county clerk of the respective counties at least thirty days previous to the day of such election." This is followed by two provisos which do not affect in any manner the question under consideration. Section 10 is as follows:

"Sec. 10. The certificate of nomination and nomination papers being so filed and being in apparent conformity with the provisions of this act, shall be deemed to be valid, unless objection thereto is duly made in writing. Such objections or other questions arising in relation thereto in the case of nomination of State officers shall be considered by the Secretary of State and the Auditor and Attorney General, and the decision of the majority of these officers shall be final. Such objections or questions arising in the case of nominations for officers to be elected by the voters of a division less than the State and greater than a county, shall be considered by the county judges of the counties

embraced in such division, and the decision of a majority of these officers shall be final. Such objections or questions arising in the case of nominations of candidates for county officers, shall be considered by the county judge, county clerk and State's attorney for such county, and the decision of a majority of said officers shall be final. Objections or questions arising in the case of nominations of city, town or village officers shall be considered by the mayor or president of the board of trustees, and the city, town or village clerk, with whom one alderman or trustee thereof, as the case may be, chosen by lot shall act, and the decision of a majority of such officers shall be final. Such objections arising in the case of nominations of town officers shall be considered by the board of auditors of such town, and the decision of a majority of such auditors shall be final. In any case where such objection is made, notice shall forthwith be given to the candidates affected thereby, addressed to their places of residence as given in the nomination papers and stating the time and place when and where such objections will be considered: *Provided,* that in cities, towns or villages having a board of election commissioners such questions shall be considered by such board and its decision shall be final."

The next piece of legislation affecting nominations and purporting by its terms to include judges was the act entitled "An act to provide for the holding of primary elections by political parties," in force July 1, 1910. (Laws of 1910, p. 47.) Section 1 provided that the nomination of candidates for the offices therein specified, including judicial offices, should be made in the manner provided in the act and not otherwise, and section 2 defined a political party. Section 6, as amended in 1913, (Laws of 1913, p. 312,) fixed certain dates for primaries for the nomination of various officers, not including judges, and provided that a primary for the nomination of all other officers included in the act should be held three weeks preceding the date of

the election of such officer. That was the only provision
for a primary for the nomination of judges of the Supreme
Court, circuit courts and superior court, and the validity
of the act as applied to such nominations came before the
court in *People* v. *Sweitzer,* 266 Ill. 459. It was there
decided that section 6 was inoperative and void as applied
to the nomination of judicial officers required by the con-
stitution to be elected on the first Monday in June, because
its provision for a primary three weeks before the election
was inconsistent with and repugnant to the other provisions
of the same act and with section 19 of the Ballot act. The
established rule of law was declared that if an act is so
conflicting and inconsistent in its provisions that it cannot
be executed the courts will declare it inoperative and void.
The courts cannot remedy defects of that character in a
legislative act or supply essential provisions, and if the act
cannot be administered as made it is null and void. It was
held that the Primary act being null and void as to elections
to be held on the first Monday in June under the provisions
of the constitution did not repeal the Ballot act as to nomi-
nations of judges to be elected at that time, and inasmuch
as the Ballot act provided a means for the nomination of
candidates at such elections, nominations might lawfully be
made for judges under the Ballot act. By that decision the
Ballot act remained in force except as to nominations ex-
cluded from its operation by valid provisions of the Primary
act, and by striking out of the Primary act the void pro-
vision for the nomination of candidates for judicial offices
at the election in June, the Ballot act remained operative
as to nominations for such elections and would govern the
making of nominations. Under that decision a nomination
of judges of the superior court or judges to be elected at
any other time than in June might still be made under the
Primary act.

That being the state of the law, the General Assembly
passed an act entitled "An act to provide for the nomina-

tion by political parties of judges of the superior court of. Cook county and of all circuit judges," in force July 1, 1917. (Laws of 1917, p. 454.) That act controls and regulates the nomination of judges of the superior court of Cook county and all circuit judges, whether elected in June or at some other time. It was intended to create, and does create, uniformity in the nomination of such judges, and was substituted for the provisions of the Ballot act which were operative only as to elections in June. Section 1 provides that candidates of any political party, as defined in the Primary act, for the office of judge of the circuit court in any county in the State of Illinois and for the office of judge of the superior court of Cook county, shall be nominated at a convention of the members of such party's county convention as created by section 10 of the Primary act as amended in 1913, which provides for conventions composed of the county central committee. It provides that if any judge or judges of the circuit court are to be elected in any circuit comprising more than one county the convention shall be composed of the members of each of the county conventions of the counties in such circuit. Section 2 provides for the place of holding the convention. Section 3 provides that at least seventy-five days prior to the time judges are to be elected, the chairman of the county central committee of each political party, or, if more than one county is included, the chairmen of the county central committees, shall file in the office of the Secretary of State a call for the conventions of their respective parties for nominating such judicial candidates, stating the time and place of holding the convention, which shall not be more than sixty days nor less than thirty-one days before the election, and in case of failure of any county chairman or chairmen to agree upon a place for the convention the Secretary of State shall make the call. Section 4 provides for the number of votes allowed to each delegate, and section 5 is as follows: "All such nominations made by

such conventions shall be duly certified to the Secretary of State by the presiding officer thereof, and when certified shall be placed upon the official ballot to be voted for at said election. Not less than fifteen days before said election the Secretary of State shall certify to the county clerk of each county within which the electors may by law vote for such candidates as may be nominated hereunder the name of the person or persons nominated for such office as shown by the certificate of such presiding officer on file in his office." All laws and parts of laws inconsistent with the act were repealed.

The scope and effect of that act were determined in *People* v. *Sweitzer*, 282 Ill. 171. The court held, as is quite apparent from the title of the act, which is to provide for the nomination of judges by political parties, and the comprehensive terms of the act, that it is complete in itself and provides all the machinery for such nominations. It provides for nominations by party conventions, the legal constituent elements of such conventions, the call for them, the time within which they are to be held, certifying the nominations made to the Secretary of State and the placing of the names of the nominees on the official ballot. Nothing more could be required to complete the nomination, and it was held that the act was in no sense an amendment of the Primary law because of its reference to that law for the definition of a political party. Reference was made by the court to the former decision in *People* v. *Sweitzer, supra,* holding that a primary for an election in June was impossible of performance under the Primary act, and the court said that the act of 1917 brought under the same law judges of the superior court of Cook county elected in November or judges elected at other times than in June, which had been previously controlled by the Primary act.

It is so clear that the provisions of the act of 1917 for the nomination of candidates for judges conflict with and are irreconcilable with the provisions of the Ballot act that

the two cannot exist together, that neither argument nor illustration is needed to enforce that conclusion. It is fundamental that every administrative agency of the State must find the source of its authority in the statute conferring it and can only exercise the power conferred in conformity with the statute. Even a court of general jurisdiction has no power or authority to do any act or render any judgment affecting persons or property unless the particular act or judgment is brought within its jurisdiction according to law. An indispensable requisite to the exercise of the power claimed by the defendants, the county judge, State's attorney and county clerk, is declared by section 10 to be that the certificates of nomination and nomination papers have been filed with the county clerk, and this means lawfully filed by virtue of a statute. Unless this condition exists there is no jurisdiction, and any act without the power given by the statute would be a nullity, without effect upon the rights of anyone. Section 7 of the Ballot act provides that certificates of nomination and nomination papers for the nomination of candidates in a single county shall be filed with the county clerk of the respective counties at least thirty days previous to the day of election, and section 10 provides that the certificates of nomination and nomination papers being so filed and being in apparent conformity with the provisions of the act shall be deemed valid unless objection thereto is duly made in writing, and objections and other questions arising in relation thereto in the case of nomination of candidates for county offices shall be considered by the county judge, county clerk and State's attorney for such county. The act of 1917 provides that the nomination shall be certified by the presiding officer of the convention to the Secretary of State, and when certified shall be placed upon the official ballot to be voted for at such election. To file a certificate of nomination of judge with the county clerk would be contrary to and in violation of the act of 1917, and the Secretary of State has no right,

power or authority to send the certificates of nomination to a county clerk, to be filed there. He has no right to relinquish or repudiate his obligation or disregard his duty but must himself perform the duty imposed by statute. It is not essential to the validity of an act for the nomination of candidates that objections or questions relating to a nomination shall be referred to any judicial or administrative authority for a hearing and decision, but, as in any other case where an officer is required to receive and act upon a certificate, report or other paper, he has authority to determine whether the paper is genuine and such as he is required to receive and make the basis of his action. If there should be rival conventions or other conditions under which different certificates should be offered to the Secretary of State, it would be his duty to decide which one is genuine and within the provisions of the law. Both because the act of 1917 is a complete law providing for each step to be taken from the call for a convention to the final one of placing the name of the nominee on the official ballot, without authority of the county judge, State's attorney and county clerk to do any act or intervene in any manner, and because the act is in irreconcilable conflict with the provision for filing the certificate with the county clerk and filing written objections there, the appellees are without the jurisdiction claimed by them.

The court erred in sustaining the demurrers to the information, and the judgment is reversed and the cause remanded with directions to overrule the demurrers, and there being no question of fact which can be involved but only a question of law, the court is directed to enter judgment ousting defendants from the exercise of the right claimed by them as set forth in the information.

*Reversed and remanded, with directions.*

FARMER, DUNCAN and THOMPSON, JJ., dissenting.