# Commonwealth for use, etc., *versus* Wells.

110 463
112 622
112 623
110 463
21 SC 227

1. A wager upon the result of a primary election is not a penal offence within the provisions of the Acts of March 24th, 1817, and July 2d, 1839. These Acts, being penal in their nature, will not be extended to primary elections which did not exist at the time of the passage of the same.

2. The words "any election within this commonwealth," as used in the Act of July 2d, 1839, apply only to the election of public officers.

3. The Act of June 29th, 1881 (P. L., 128), entitled "An Act to regulate the holding of and prevent frauds in the primary elections of the several political parties in the commonwealth of Pennsylvania," does not bring primary elections within the purview of the Act of July 2d, 1839.

October 8th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Greene county*: Of October and November Term 1885, No. 110.

This was an action by the Commonwealth for the use of the directors of the poor against William Wells to recover the sum of $200, the amount of a bet between John H. Rinehart and Peter Cole, on the result of a primary election in Greene county held May 27th, 1882, placed in the hands of the defendant as stakeholder. Plea, *nil debet.*

On the trial, before INGHRAM, P. J., the following facts appeared: It has been customary for many years for the members of the Democratic party in Greene county to hold primary elections to nominate candidates to be voted for at the next general election. These primary elections were held and carried on under a set of " Rules and Regulations for the Government of the Democratic Primary Elections in Greene county."

At the primary election held May 27th, 1882, Abner Ross, Matthias Brant and Dr. Alexander Patton were candidates for the nomination in Greene county for the office of state senator, and, as such, were voted for by the qualified Democratic electors at said primary election held in the several townships, wards and boroughs in Greene county, Pa. A short time before the said primary election, and after the candidates were announced, and while they were canvassing for the election, one John H. Rinehart and Peter Cole, both qualified voters of Greene county, Pa., waged or bet $200 on the result of the election between the said Matthias Brant and Abner Ross, and placed the money, so bet and waged, in the hands of the said William Wells, the above named defendant. The bet or wager between the said John H. Rinehart and Peter Cole was that Matthias Brant would not be nominated for the office of state senator at the primary election to be held by the Democratic party on the 27th of May, 1882. This bet was made in the borough of Waynesburg in Greene county, Pa., and was made in the month of May, 1882. Cole won the bet, and the stakeholder paid it over to him. Rinehart then had the proper information made, and notified the directors of the poor, who brought this suit on June 13th, 1882, under the Acts of March 24th, 1817, and July 2d, 1839 (P. L., 544), prohibiting wagering or betting on the event of an election, held under the Constitution or laws of the United States or the constitution or laws of this commonwealth, and prescribing the penalty therefor. The provisions of these Acts are fully set out in the opinion of the Supreme Court *infra.*

Plaintiff requested the court to charge : 1. That, if the jury believe from the evidence that John H. Rinehart and Peter Cole bet or wagered $200 on the result of the primary election

held on the 27th day of May, 1882, between one Matthias Brant, Dr. Patton and Abner Ross for the nomination for the office of state senator, and placed the amount of the wager, to wit: $200, in the hands of the defendant, then their verdict should be for the plaintiff. *Answer.* Refused. (First assignment of error.)

Defendant requested the court to charge:

1. The word "election," as used in the Act of Assembly under which this suit was brought, is to be understood as meaning an election required to be held by the Constitution or laws of the United States or of this state. *Answer.* Affirmed. (Second assignment of error.)

2. An election held by the Democratic party of Greene county to nominate candidates for the different offices to be elected by the people, is not an election within the meaning of that word as used in the Act of Assembly under which this suit was brought. *Answer.* Affirmed. (Third assignment of error.)

3. Your verdict should be for the defendant. *Answer.* Affirmed. (Fourth assignment of error.)

The court charged the jury as follows: Under the view we take of the law, we think primary elections are not regulated by the laws of this commonwealth as are the general elections, and that under the evidence in this case the plaintiff is not entitled to recover, and your verdict should be for the defendant.

Verdict for the defendant and judgment thereon. Plaintiff then took this writ, assigning for error the answer to the points and the charge as above stated.

*A. A. Purman* (*Huss* with him), for plaintiff in error.— Wagering or betting on the event of an election held under the Constitution or laws of the United States or the constitution or laws of this commonwealth is prohibited by the Act of March 24th, 1817(Purd. Dig. 669), and the Act of July 2d, 1839, prescribes the penalty therefor, and the method of proceeding, which was followed in this case.

[GORDON, J. There were no "primary elections" in 1817. How can that Act apply to such an election?]

The law opens to let in subsequent cases of the same kind just as a devise may open to let in after-born children. There could never have been a decision that Statutes are *in pari materia* except upon this principle. The legislative intent cannot be evaded in this way.

The primary election held on the 27th of May, 1882, being authorized and regulated by the laws of this commonwealth, the bet or wager between Rinehart and Cole was a bet or

14 OUTERBRIDGE—30

wager on the event or upon the result of an election held
under the laws of this commonwealth.

It is well settled that a remedy provided by one Statute will
be extended to cases arising on the same matter under a sub-
sequent Statute. All Acts or Statutes on the same subject
matter are *in pari materia*, and are to be taken together as
one Statute: Rex *v.* Loxdale, 1 Burrows, 445; Vernon's Case,
4 Coke, 4; Rogers *v.* Bradshaw, 20 Johns. R., 735; Keeling *v.*
Griffin, 6 P. F. Smith, 305; Steele *v.* Lineberger, 22 P. F.
Smith, 239.

*J. A. J. Buchanan* (*Wyly* and *Walton* with him), for defend-
ant in error.—The Act of 1817 is in derogation of the common
law, and should receive a strict construction: Potter's Dwarris
on Statutes, 240.

Both the Acts of 1817 and that of 1839 are penal in their
nature, and hence cannot be extended to a class of elections
which did not exist at the time they were passed: King *v.*
Handy, 6 T. R., 288.

The Acts of June 8th, 1881, and June 29th, 1881, were leg-
islating upon a new subject, and if it were the intention to bring
all conventions and primaries under the provisions of the Act
of 1839, they should have so provided. The Acts of 1881 are
also penal in their nature, and must be strictly construed.

Mr. Justice TRUNKEY delivered the opinion of the court
October 19th, 1885.

Rinehart and Cole made a bet or wager on the result of the
primary election to be held on May 27th, 1882, in the county
of Greene, respecting the nomination of Matthias Brant for
the office of state senator, and deposited the money so bet in
the hands of William Wells. This action is brought against
the stakeholder to recover the amount of the bet for the use
of the poor of the county. If the plaintiff has a right to recover,
it is purely statutory. Therefore the inquiry is whether the
case is within the Statutes prohibiting betting on elections.

The preamble and first section of the Act of March 24th,
1817, are as follows: " Whereas the practice of laying wagers
or bets on the event of any elections, or the success of candi-
dates for public offices, has a great tendency to promote
immorality and corruption;" therefore enacted that " Wager-
ing or betting on the event of an election, held under the
Constitution or laws of the United States, or the constitution
or laws of this commonwealth, are hereby prohibited, and all
contracts or promises founded thereon are declared to be en-
tirely null and void." The penal provisions of that Act were
repealed and supplied by the Act of July 2d, 1839, relating to

elections, which declare that any person who shall make a bet
or wager, or shall offer to make a bet or wager, or shall chal-
lenge or invite any person to make a bet or wager, upon the
result of any election within this commonwealth, upon convic-
tion thereof shall forfeit and pay three times the amount so
bet or offered to be bet; and that the officers having care of
the poor in the county or district where the offence has been
committed shall bring suit against the depositor or stakeholder
when said bet is deposited in the hands of a third person; or
against the party winning said bet, when the same is not so
deposited, for recovery of the amount so bet; and if, on the
trial, it shall appear that land, goods, money or thing of value
was bet on the result of any election within this common-
wealth, the plaintiff shall be entitled to recover the amount or
value thereof, for the use of the poor, from said stakeholder,
or person winning said bet when there is no stakeholder:
Pamp. L., 1839, p. 544, sec. 115, 118.

These provisions are parts of enactments which relate to
the election of public officers, and have never been understood
otherwise.   The Act of 1817 expressly refers to betting on
the success of candidates for public offices, and the penal pro-
visions against betting on the result of elections, enacted in
1839, are embodied in an Act which relates exclusively to
elections for public officers.   The subject respecting which
betting is prohibited is unmistakable, and the word election
cannot be justly construed to apply to other subjects.   "We
are to look to the words in the first instance, and when they
are plain we are to decide on them.   If they be doubtful, we
have then to have recourse to the subject matter."   The mean-
ing of the words, "any election within this commonwealth,"
when read with the context, is plain, and when considered
with the subject matter there is no footing to conjure a doubt
whether they may refer to the election of officers for a private
corporation, or of a meeting of citizens.   But, if taken by
themselves, they apply to all elections; and, if limited only
by the words, "any election held under the constitution or
laws of this commonwealth," they may apply to the election
of the officers of an insurance company, or bank, or any other
private corporation whose charter is a Statute of this common-
wealth containing regulations for election of the corporate
officers.   It is not contended that the Acts under consideration
refer to elections by private corporations.

"Penal Statutes must be strictly construed, and never ex-
tended by implication."   "The proper course is, in their con-
struction, to search out and follow the true intent of the
legislature, and to adopt that sense which harmonizes best
with the context, and promotes in the fullest manner the

[Meinweiser v. Hains.]

apparent policy and objects of the legislature." "No man incurs a penalty unless the act which subjects him to it is clearly both within the spirit and letter of the Statute imposing such penalty." And it was long ago ruled that a penal Act of parliament cannot be extended to things that did not exist when the Statute was made.

On June 29th, 1881, was enacted an Act entitled "An Act to regulate the holding of, and to prevent frauds in, the primary elections of the several political parties in the commonwealth of Pennsylvania." This Statute relates to primary elections by political parties to nominate candidates for public offices. Instead of an election by all the electors of a municipality for public officers, it is an election by the members of a party for its candidates. These candidates may afterwards be voted for by some of the electors when all electors are entitled to vote. Men may be candidates who were not voted for, or who were defeated, at the primary election. An election by a party for its candidates widely differs in its object from an election by the electors for officers. Such primary election is as plainly without the purview of the Act of 1839 as is the election of officers for a private corporation. However desirable that betting on the result of any primary election be prohibited, the provisions of the Act of 1839 cannot be extended to that end save by legislation.

Judgment affirmed.