[No. 9383.   Department Two.   June 25, 1912.]

THE STATE OF WASHINGTON, *Respondent*, v.
W. H. ROBINSON, *Appellant*.[1]

ELECTIONS—PRIMARY ELECTIONS—STATUTES—CONSTRUCTION. The primary election law, Rem. & Bal. Code, § 4837, only adopts provisions of the statutes with relation to the holding of elections, and not general criminal statutes which are no part of the election laws.

ELECTIONS—PRIMARY ELECTIONS—ELECTION OFFICERS—OFFENSES. Rem. & Bal. Code, § 4967, which provides that every person charged with the performance of any duty under the provision of any law of the state relating to elections who wilfully neglects to perform such duty shall be punished by fine or imprisonment, being an early general criminal statute not a part of any election act, is general in its application, and applies to the September primary election for the nomination of candidates, under the act of 1909, subsequently enacted; hence such officers may be prosecuted for malfeasance under § 4967.

[1]Reported in 124 Pac. 379.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered November 4, 1910, sentencing the defendant for malfeasance in office, upon his plea of guilty, upon overruling a motion in arrest of judgment. Affirmed.

*Gordon, Easterday & Askren,* for appellant.

*J. L. McMurray, A. O. Burmeister,* and *F. G. Remann,* for respondent.

ELLIS, J.—This is an appeal from a judgment convicting the appellant of the offense of malfeasance as an election officer. The information charged, in substance, that on or about September 13, 1910, the appellant and four others were election officers for the second precinct of the third ward, in the city of Tacoma, Pierce county, Washington, at the primary election held for the purpose of nominating candidates for county, state, and congressional offices; that the appellant was one of the clerks of the election, and with the other defendants was charged by the laws relating to primary elections with the duty of counting the ballots cast in that precinct for candidates for nomination on the republican ticket, and entering the number of votes for each candidate in the poll book and tally sheet for that precinct, and certifying the same; that, in the performance of their duties as such election officers, they unlawfully, wilfully, falsely, fraudulently, and knowingly refused to enter in the poll book and tally sheet the number of votes cast for certain named candidates for certain offices on the republican ticket, and entered in the poll book and tally sheet for that precinct more votes for certain other named candidates for the same offices, and certified the returns so entered as being a true and correct return of all the republican votes cast at that primary election in that precinct, and that the candidates therein named received the exact number of votes placed opposite their respective names for the offices therein desig-

nated, all of which was false and fraudulent as the defendants well knew.

The defendants named in the information joined in a demurrer, on the ground, among others, "that the facts charged do not constitute a crime under the laws of the state of Washington." The demurrer was overruled. The appellant Robinson entered a plea of guilty, and moved in arrest of judgment upon the ground, that "the facts as stated in the information herein do not constitute a crime or misdemeanor." The motion was denied, and judgment was entered, sentencing appellant to five months' imprisonment and to pay a fine of $250.

It is stipulated that the sole question to be determined is whether or not the penalties provided by Rem. & Bal. Code, § 4967, attach and apply to an election or primary meeting held under the provisions of the primary law of 1907. No other matter being discussed, we will confine our attention to that single question. Section 4967 reads as follows:

"Every person charged with the performance of any duty under the provisions of any law of this state relating to elections, who wilfully neglects or refuses to perform such duty, or who, in the performance of such duty, or in his official capacity, knowingly or fraudulently acts in contravention or violation of any of the provisions of law relating to such duty, shall, on conviction thereof, be fined in any sum not exceeding one thousand dollars, to which punishment may be added imprisonment in the county jail for a term not exceeding one year."

This section was first enacted by the territorial legislature of 1877 (Laws 1877, p. 205, § 2), as a part of the territorial criminal code, and was embodied in the code of 1881 as § 912.

The election, for malfeasance at which the appellant was convicted, was the "September primary" election held in pursuance of ch. 209, Laws of 1907, p. 457 (Rem. & Bal. Code, § 4804 et seq.). Section 33 of the act, as amended by § 10, of ch. 82, Laws of 1909, p. 179 (Rem. & Bal. Code, § 4837), reads:

"The provisions of the statute in relation to the holding of elections, the solicitation of voters at the polls, the challenging of voters, the manner of conducting elections, of counting the ballots and making returns thereof, and all other kindred subjects, including the sale of intoxicating liquors during the hours the polls are open, shall apply to all primaries in so far as they are consistent with this act."

It is contended by the respondent that this section adopts, as a part of the primary election law, § 4967 above quoted. This position is untenable. Section 33 of the primary law in terms adopts only provisions of the statute "in relation to the holding of elections." Section 4967 is no part of that statute. It is a general criminal statute not found in any election law. It does not follow, however, that the provisions of § 4967 do not apply to violations of duty by primary election officers.

The appellant contends that a primary election, held pursuant to the act of 1907, is not such an election as the legislature had in contemplation when it passed § 4967, and that, therefore, violations of duty imposed upon election officers by the later act do not incur the penalty of that section. There would be more force in this contention if § 4967 had ever been enacted as a part of the general election laws; but such is not the case. There is, therefore, no implication, from context or connection, that it shall apply only to general elections, or to elections of officers, or to any particular kinds of elections, or to elections for any particular purpose. It was enacted, and has always been, a general criminal statute. It is couched in the most general terms. It expressly applies to every person charged with the performance of any duty under the provisions of any law of the state relating to elections. It must have been known to the legislature of 1877, when it passed this section, that the laws relating to elections would be changed, that new offices would be created, that the necessity for elections for such newly created offices would arise, that elections for different purposes than those then provided for would be authorized by

statute, and that new duties would be imposed upon election officers from time to time. Yet we find in this section no intimation that its provisions shall apply only to elections provided for, or only to duties prescribed by laws relating to elections then in force. We cannot conceive that it was the intention of that legislative body that, upon every future modification of the election laws, this section would have to be reenacted, or a similar section passed, or the election laws as modified be left without sanction. To give to this section the narrow construction contended for would have made it a dead letter long since. It was intended, as are all general criminal statutes, to be of a somewhat permanent nature. It was meant to meet a known and continuing potential condition, which would necessarily be present under any statute relating to elections, without regard to the time of its passage or the purpose of the election. It defines with certainty and exactness the offense and the conditions under which it may be committed. It is immaterial under what law relating to elections those conditions may be presented.

The cases cited by the appellant seem to us soundly distinguishable from the case here. In the English case of *Wells v. Porter*, 3 Scott 141, 5 L. J. C. P. 250, the statute under consideration was directed against the practice of jobbing in stocks. The act was construed as applying only to domestic stocks; (1) because jobbing in foreign stocks was unknown in England at the time the act was passed, and (2) because the act contained certain provisions which could apply only to domestic stocks, thus showing that such stocks alone were in the legislative mind. The distinction seems too obvious for comment.

The case of *Commonwealth v. Wells*, 110 Pa. St. 436, 1 Atl. 310, arose under certain statutes which, though penal in their nature, were parts of acts relating solely to the election of public officers, and the court held that the application of the penalty was limited by the context to elections of such officers. The court said:

"These provisions are parts of enactments which relate to the election of public officers, and have never been understood otherwise. The act of 1817 expressly refers to betting on the success of candidates for public offices, and the penal provisions against betting on the result of elections, enacted in 1839, are embodied in an act which relates exclusively to elections for public officers. The subject respecting which betting is prohibited is unmistakable, and the word election cannot be justly construed to apply to other subjects. 'We are to look to the words in the first instance, and when they are plain we are to decide on them. If they be doubtful, we have then to have recourse to the subject matter.' The meaning of the words 'any election within this commonwealth,' when read with the context, is ·plain, and when considered with the subject matter there is no footing to conjure a doubt whether they may refer. to the election of officers for a private corporation, or of a meeting of citizens."

It was, therefore, held that betting upon a primary election did not incur the penalty of the statute which clearly related to and was a part of a law providing only for the election of officers.

*Commonwealth v. Howe*, 144 Mass. 144, 10 N. E. 755, also involved simply a question of construction. The court held that "balloting at a national, state, or municipal election" imported balloting in the election of national, state, and municipal officers; and that, therefore, the penalty provided in the election law for casting more than one ballot at a national, state, or municipal election applied only to balloting for such officers, and did not apply to balloting on the question of granting licenses for the sale of intoxicating liquors.

It is obvious that, in each of the cases cited, the statute under consideration was much more circumscribed in its terms than that here involved, and both by context and specific provisions was limited in its application to specific kinds of elections. No such limitation, either by context or by the terms employed, is found in our statute. It is a general criminal law not a part of any election act, and hence it is

not limited by the context to any particular election statute. It contains no words which by any intendment can be construed as limiting its penalty to violations of duty in elections of officers. The acts penalized are neglect or refusal to perform any duty or violation of any provision of law relating to such duty, incumbent "under the provisions of any law of this state relating to elections." That the primary election law of 1907 is a law of this state relating to elections is self-evident. That the officers of such primary elections are "charged with the performance" of duty is unquestionable. The case presented falls squarely within the terms of the general criminal statute.

The judgment is affirmed.

MOUNT, FULLERTON, and MORRIS, JJ., concur.