William J. McAlpine, Appellee, *vs.* Fred G. Dimick, County Clerk, *et al.* Appellants.

*Opinion filed June 22, 1927.*

1. Elections—*the Primary Election law of 1910 is unconstitutional.* Sections 10, 29 and 30 of the Primary Election law of 1910, providing that each precinct committeeman in the county convention shall have one additional vote for each fifty votes cast in his precinct at the last election for Governor and authorizing the supervisors to divide any precinct containing more than 800 voters, are unconstitutional in their operation after such division, as committeemen in precincts which have been divided after an election for Governor will be deprived of their additional votes until the next election for Governor, and as these sections are essential to the operation of the Primary law the entire law must be held invalid. (*People v. Fox,* 294 Ill. 263, followed.)

2. Same—*section 18 of article 2 of the constitution guarantees equal individual suffrage.* Section 18 of article 2 of the constitution, providing that all elections shall be free and equal, means that every qualified voter may freely exercise the right to cast his vote without restraint or coercion of any kind, and that his vote, when cast, shall have the same influence as that of any other vote.

3. Same—*a primary election law must provide equal suffrage.* A law which provides for the holding of primary elections for the nomination of candidates for office regulates the form and contents of the ballot, and the method of choosing the candidates must conform to the provision of section 18 of article 2 of the constitution that all elections shall be free and equal.

4. Same—*Legislative Primary law of 1910 is invalid.* As the Legislative Primary law of 1910 is not complete in itself but its administration depends upon the Primary Election law of 1910, which violates the constitutional provision for equality of elections, the former must also be held unconstitutional.

5. Injunction—*equity will enjoin unauthorized appropriation of public funds.* Equity, at the suit of a tax-payer, will enjoin public officers from the unauthorized appropriation of public funds derived from taxation.

6. Same—*equity will enjoin expense of an election under an invalid law.* As an unconstitutional statute is not a law, equity will enjoin an appropriation of public funds in pursuance of such statute, and where an election law is invalid in permitting a re-

districting of precincts resulting in an inequality of the voting privilege, any tax-payer of the county, by a bill brought for the benefit of all other tax-payers, may enjoin the appropriation of public funds for carrying on an election under the invalid law, whether or not the complainant is a resident or elector of a precinct which had been re-districted.

7. SAME—*when suit to enjoin expense of an election is not premature.* A bill filed by a tax-payer to enjoin the appropriation of public funds in carrying on an election under an invalid law is not premature where notice had been given of the holding of the election, where former elections had been held under the law, and where it is apparent from facts stated in the bill, which were admitted by demurrer, that the expenses would be incurred unless the relief prayed by the bill were granted.

HEARD, C. J., and STONE, J., dissenting.

APPEAL from the Circuit Court of Lee county; the Hons. WILLIAM J. EMERSON, HARRY EDWARDS, and HARRY L. HEER, Judges, presiding *en banc.*

OSCAR E. CARLSTROM, Attorney General, MARK C. KELLER, State's Attorney, and S. S. DuHAMEL, for appellants.

GEORGE C. DIXON, and SHERWOOD DIXON, (HENRY S. DIXON, JEROME F. DIXON, and GERALD JONES, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

On a tax-payer's bill the circuit court of Lee county, after overruling a demurrer to the bill and an election by the defendants to stand by their demurrer, entered a decree enjoining the county clerk of Lee county from drawing any warrant on the county treasurer for the payment to any person acting as judge or clerk at the primary election in Lee county on April 13, 1926, of any fees for such services, and from paying to any person furnishing or providing polling places, blanks, printed specimen ballots, printed official ballots or other supplies necessary to carry out the

326—16

provisions of the acts of the General Assembly providing for the holding of such primary election any pay therefor, enjoining the county board from auditing or allowing any such claim or directing its payment and enjoining the county treasurer from paying any such warrant. The defendants appealed.

As a basis for its decree the court held unconstitutional and void an act of the General Assembly entitled, "An act to provide for the holding of primary elections by political parties," approved March 9, 1910, (Laws of 1910, p. 46,) and an act of the General Assembly entitled, "An act to provide for the holding of primary elections by political parties for the nomination of members of the General Assembly and the election of senatorial committeemen," approved March 9, 1910. (Laws of 1910, p. 77.) The important question for decision, therefore, is the constitutionality of these two acts, which are referred to as the General Primary Election law and the Legislative Primary Election law.

The first of the above acts provided that the nomination of all elective State, congressional, county, city and village, (including officers of the municipal court of Chicago,) town and judicial officers, members of the State Board of Equalization, clerks of Appellate Courts and trustees of sanitary districts should be made, and the election of precinct and State central committeemen by all political parties should be held, in the manner provided in the act and not otherwise, provided that the act should not apply to the nomination of candidates for electors of President and Vice-President of the United States and trustees of the University of Illinois and should not apply to township and school elections. The act defines political parties and other terms used in the act, and provides in section 8 that the managing committees of each political party shall comprise a State central committee, a congressional committee for each congressional district, a county central committee for

each county, a city central committee for each city or village, and a precinct committee for each precinct. Section 9 provides, in paragraph 2, that at the September primary held in 1910, and at the April primary held every two years thereafter, each primary elector may write or attach in the space left on the primary ballot for that purpose the name of one qualified primary elector of his party in the precinct for member of his political party precinct committee, and in paragraph 3, that the county central committee of each political party shall consist of the members of the various precinct committees of such party in the county. Section 10 provides, in paragraph ($a$), that the county central committee of each political party shall meet on the first Monday next succeeding the April primary at the county seat and organize by electing from its number a chairman, and either from among its own number, or otherwise, such other officers as the committee may deem necessary or expedient; that this meeting of the county central committee shall be known as the county convention, and the county convention of each political party shall choose delegates to the congressional and State conventions of its party, provided that in the county convention each delegate to the county convention shall have one vote and one additional vote for each fifty votes, or major fraction thereof, of his party cast in his precinct at the last general election. Section 9 as amended in 1913 provided in paragraph 3 that in the organization and proceedings of the county central committee each precinct committeeman shall have one vote and one additional vote for each fifty votes, or major fraction thereof, of his party cast in his precinct for Governor at the last general election, and each ward committeeman shall have one vote for each precinct in his ward and one additional vote for each fifty votes, or major fraction thereof, of his party cast in each precinct of his ward for Governor at the last general election. (Laws of 1913, p. 310.) By the same amendment it was provided in section 10, para-

graph (*a*), that in the county convention each of the precinct committeemen shall have one vote and one additional vote for each fifty votes, or major fraction thereof, of his party cast in his precinct for Governor at the last general election, and that each of such ward committeemen shall have one vote for each precinct in his ward and one additional vote for each fifty votes, or major fraction thereof, of his party cast in each precinct of his ward for Governor at the last general election. By these enactments it was provided that the force of each elector's vote through his representatives on the county central committee, which was the managing committee of his party, and in the county convention, which selected delegates to State conventions, was determined by the number of votes cast in his precinct for his party's candidate for Governor. Section 4 defines "precinct" as "a voting district heretofore or hereafter established by law within which all qualified electors vote at one polling place," and section 5 provides that the primary shall be held at the regular polling places now established or which may hereafter be established for the purposes of a general election. Sections 29 and 30 of the general Election law establish election precincts and require the board of supervisors, at its June or July meeting, to divide into districts any precinct which appears, by the number of votes cast at the general election in the previous November, to contain more than 800 voters, so that each district shall contain, as near as may be practicable, 500 voters and not in any case more than 800.

It is averred in the bill that by a resolution adopted on June 12, 1917, the board of supervisors provided that the first district of Dixon township should include all that part of the township lying south of the center of Rock river and east of a line commencing at a described point in the center of Rock river and running thence southerly on a certain line to the south line of said township; and that the second district should include all that part of the

township lying south of the center of Rock river which is bounded on the east by the line described as the west line of district 1, and on the west by a line commencing at a described point in the center of Rock river and running thence southerly on a certain line to the south line of the township. It is further averred that at the general election in November, 1920, the candidate of the republican party for Governor received 188 votes in the first precinct and 285 votes in the second precinct as these precincts then existed; that at the primary election on April 8, 1924, David H. Spencer was elected republican precinct committeeman for the first precinct and thereupon became entitled to have five votes in the organization and proceedings of the county central committee and in the county convention of the republican party, and that at the same primary election Robert W. Sterling was elected republican precinct committeeman for the second district and thereupon became entitled to have seven votes in the organization and proceedings of the county central committee and in the county convention of the republican party; that at a general election in November, 1924, the nominee of the republican party for the office of Governor received 205 votes in the first precinct and 314 votes in the second precinct, and Spencer and Sterling, who had been elected precinct committeemen of the first and second precincts, respectively, continued to be entitled to the same number of votes as before; that each is now residing at the same place where he was residing at the time he was elected, and is a member of the republican party and possessed of the legal qualifications required of precinct committeemen. It is further averred that by resolution of the board of supervisors on June 10, 1925, it was provided that the first precinct should include all of the territory in the north end of district 2 north of East First street, and this territory was detached from the second precinct; that the territory so detached from the second precinct and attached to the first is residence territory,

wherein are situated many residences, boarding and rooming houses, a nurses' home, and a hotel in which there are, and for many years last past have been, residing more than fifty legal voters who are members of the republican party; that after the primary election to be held on April 13, 1926, the persons on that date elected as successors of Spencer and Sterling as republican precinct committeemen of the first and second precincts will be the only persons entitled to act as such republican precinct committeemen, and it will not appear by the number of votes cast at the general election in November, 1924, how many votes were cast in either precinct 1 or precinct 2, in which the successors to Spencer and Sterling will have been elected, and it will therefore be impossible to determine how many additional votes either of them will be entitled to have in the organization and proceedings of the county central committee or in the county convention of the republican party. The result, it is claimed, will be that in the organization of the county central committee and the election of a chairman and other officers, in choosing delegates to State, congressional and other conventions and in performing all other functions of the political organization, each precinct committeeman in precincts which have not been divided since the election in 1924 will have one vote and an additional vote for each fifty votes, or major fraction thereof, of the party cast in his precinct for Governor at the last general election, while precinct committeemen in precincts which have been divided will not be entitled to any additional votes, and as a result the votes of the electors cast in districts 1 and 2 will not be equal in influence to the votes of other qualified electors in the county in whose precincts the number of votes cast for Governor at the last general election does appear.

The condition with reference to the town of Dixon described in the bill is one which may have arisen in several townships in the county, and no doubt has arisen in many,

if not most, of the counties in the State. Where a precinct has been divided in June or July following the election, it is impossible, until after the next election for Governor, for the committeeman in either division to cast more than one vote, for the right to cast any additional vote must depend upon the number of votes cast in the division of which he is committeeman for Governor at the last election, and since the division did not exist at the last election no votes were cast in it. There is no record of the number of votes cast by voters who reside in those parts of the old precinct which constitute the new and different districts, respectively, if that were of any importance under the statute, and no basis is provided by the law in such cases for giving any vote to precinct committeemen additional to the one vote to which each is entitled, regardless of the number of votes cast. In the case mentioned in the bill the precinct committeemen for districts 1 and 2 of the town of Dixon would be entitled to one vote each instead of seven and five, respectively, as before the precincts were changed, and the influence of the vote of each elector in those two precincts through his precinct committeeman on the action of his party upon any matter within the scope of the committee's authority in the selection of delegates to the State and other conventions, in the nomination of candidates for electors of President and Vice-President of the United States and trustees of the University of Illinois, and in the formulation of his party's platform, is reduced to one-fifth or one-seventh of what it was before the change and of the influence of voters in other precincts in which no changes were made. An election under such circumstances is not the equal election which the constitution requires.

It was no doubt the impossibility of determining the number of votes cast in the new precincts in cases where precincts had been divided after one election for Governor and before the next one which induced the legislature, when it amended section 33 of the general Election law in 1917

(Laws of 1917, p. 486,) so as to authorize the members of the board of supervisors belonging to the political party having the greatest number of votes on such board to select the majority of the election judges in each of the districts or precincts in which such political party cast the highest number of votes at the preceding election for Governor, and also to select the minority of judges of election in each election district or precinct in which such political party cast the second highest number of votes for Governor at the preceding election, and require the board of supervisors to appoint the persons so selected, to enact that in any case where a township has been or shall be re-districted, in whole or in part, subsequent to one general election for Governor and prior to the next, the judges of election to be appointed for all new or altered precincts or districts shall be selected in the method provided in the amended section, but the majority of such judges for each such precinct or district shall be selected from the political party which cast the highest number of votes for Governor at the last preceding general election in the entire township and the minority judge from the political party having cast the second greatest number of votes for Governor at such election.

Section 18 of article 2 of the constitution requires that all elections shall be free and equal, and this means that every qualified voter may freely exercise the right to cast his vote without restraint or coercion of any kind, and that his vote, when cast, shall have the same influence as that of any other voter. (*People* v. *Election Comrs.* 221 Ill. 9; *Rouse* v.. *Thompson,* 228 id. 522; *People* v. *Fox,* 294 id. 263.) A law which provides for the holding of primary elections for the nomination of candidates for office, regulates the form and contents of the ballot and the method of choosing the candidates, must conform to this requirement of the constitution. *People* v. *Election Comrs. supra.*

In 1919 the General Assembly enacted a revision of the general Primary law of March 9, 1910, which it purported

expressly to repeal. (Laws of 1919, p. 476.) This act contained a provision similar to that contained in the act of 1910 which we have just been considering, which provided that in the organization and proceedings of the county convention each precinct committeeman shall have one vote and one additional vote for each fifty votes, or major fraction thereof, of his party cast in the precinct for Governor at the general election then next preceding, and each ward or district committeeman shall have one vote for each precinct in his ward or district and one additional vote for each fifty votes, or major fraction thereof, of his party cast in the county for Governor at the general election then next preceding. In *People* v. *Fox, supra,* this act was before us for consideration and was held to violate section 18 of article 2 of the constitution and to be so essential to the operation of that act as to render the whole act inoperative. The principle which was held fatal to that act applies here with equal force.

The Attorney General argues that political parties are merely the outgrowth of custom and are not voluntary associations in a legal sense and there are no members of them in any legal sense; that the complainant is claiming constitutional protection to what is at most a mere partisan privilege, subject to all such regulations and limitations as the legislature may deem necessary to the public welfare, and he refers to the deprivation of equality of representation in a party convention as a trivial detriment. Our election laws, including those now under consideration, constantly refer to political parties, and the members representing or belonging to political parties, in those words and confer upon them certain well defined legal rights, and the makers of the constitution thought the vote of every citizen of such value as to be entitled to the protection of a special constitutional safeguard protecting its equality with that of every other citizen. Equal individual suffrage is the right of every American man or woman, is at the foun-

dation of our scheme of government, and the free and equal exercise of that right, unhampered by any law by which the influence of the votes of any class of voters may be increased or decreased in relation to the votes of any other class, is essential to the preservation of the liberties of the people. A fraction of difference in the value of a vote may be small but it can never be trivial, for when it is multiplied by a million it becomes a resistless force. The power to make a distinction between voters would itself be irresistible. This same element of inequality of representation in a party convention was held fatal in the *Fox case* to the Primary Election law of 1919 and must have the same effect on the law of 1910.

The appellants in their brief have mistaken the relief which the appellee seeks. He does. not ask to have the right of any precinct committeeman to vote adjudicated, enforced or enjoined. The decree rendered does not purport to affect those matters. The relief prayed for by the bill and granted by the decree is not relief of the complainant as an elector but as a tax-payer. The bill alleges that the county clerk has given notice of a primary election in accordance with a void act of the legislature, that the judges and clerks of election of the county will proceed to hold the election, that the county clerk threatens to draw warrants on the treasurer for the pay of the judges and clerks of election and the other expenses of conducting the election, and the treasurer will pay them from the treasury of the county and thereby increase the burdens of taxation upon the complainant. Equity has always exercised the jurisdiction, at the suit of a tax-payer, to enjoin public officers from the unauthorized appropriation of public funds derived from taxation to purposes not authorized by law. (*Jones* v. *O'Connell*, 266 Ill. 443; *Miller* v. *Hale*, 308 id. 275; *Peabody* v. *Forest Preserve District*, 320 id. 454.) An unconstitutional statute is not law, and an appropriation of public funds in pursuance of an unconstitutional statute is

an unlawful appropriation which will be restrained. *Burke v. Snively,* 208 Ill. 328.

The objection that the suit was prematurely brought is not valid. The object of the bill, which was filed on March 27, 1926, was to prevent the public officers from paying, out of funds raised by taxation, expenses not authorized by law. It was proper to bring the suit before the acts sought to be enjoined had been committed or the expenses had been incurred and as soon as it was apparent that the expenses would be incurred and unlawfully paid unless enjoined. The county clerk had already proceeded so far as to give the notice of the election. The Primary law had been recognized and primary elections held under it for many years, and it was apparent from the facts stated in the bill, which are admitted by the demurrer to be true, that the expenses would be incurred and paid and the funds in the treasury reduced for that purpose unless the relief prayed by the bill were granted. The bill was brought for the benefit of all other tax-payers in the county as well as the complainant named, and it was immaterial to the maintenance of the bill whether the complainant was a resident or elector of either of the changed precincts or not. He might have lived in the most remote precinct in the county, might not have been an elector in any precinct, and the effect of the unauthorized payment on his taxes would have been the same.

Section 60 was amended in 1923 so as to except from the provisions of the act the nomination of candidates for county offices to be elected at special elections and require them to be nominated by the managing committees of the respective political parties. (Laws of 1923, p. 350.) This amendment is an infringement of the right guaranteed by the constitution that all elections shall be free and equal. (*Rouse* v. *Thompson, supra.*) The provision of section 7 giving employees the right to absent themselves from their employment for two hours on election day for the pur-

pose of voting without any deduction from their salaries or wages on account of such absence is also unconstitutional, being a violation of section 2 of article 2 of the constitution. (*People* v. *Chicago, Milwaukee and St. Paul Railway Co.* 306 Ill. 486.) These sections are not, however, of such a character as to interfere with the operation of the rest of the act if they are stricken from it and therefore do not affect the constitutionality of the entire act.

The Legislative Primary Election law, which was approved March 9, 1910, was not an independent act complete in itself. It provides for the nomination of candidates for the offices of senator and representative in the General Assembly only, these offices having been omitted from the General Primary Election law. It was enacted at the same special session of the General Assembly as the General Primary Election act, was approved. on the same day and became effective on the same day, July 1, 1910. It embodied no means for putting its provisions in operation, but provided in section 9 that the names of all candidates to be voted for under the act should be placed on the same ballot as candidates for other offices for nominations to be voted for at the same primary election, and in section 13, that "except as herein otherwise expressly·provided, each, every and all of the provisions of any act relating to the holding of primary elections by political parties, passed by this extraordinary session of the General Assembly, and acts hereafter passed, amendatory thereof, shall, so far as the same may be applicable, apply to and govern primary elections held under the provisions of this act." Since we have just held the General Primary Election act,—the only other act passed at the same session of the General Assembly relating to the holding of primary elections by political parties,—unconstitutional, the Legislative Primary Election act falls with it. Since the latter act is not complete for the purpose for which it was intended, and, standing alone, is incapable of being administered, it is void.

*People* v. *Righeimer,* 298 Ill. 611; *People* v. *Strassheim,* 240 id. 279; *Rouse* v. *Thompson, supra.*

The decree of the circuit court is affirmed.

*Decree affirmed.*

HEARD, C. J., and STONE, J., dissenting.