(No. 19039.—

THE PEOPLE *ex rel.* Oscar Lindstrand, Petitioner, *vs.* LOUIS L. EMMERSON, Secretary of State, *et al.* Respondents.

*Opinion filed February 20, 1929.*

FARMER and DUNN, JJ., dissenting.

OSCAR LINDSTRAND, *pro se,* (FRANK J. LOESCH, TIMO-
THY J. SCOFIELD, C. F. LOESCH, and R. W. RICHARDS, of
counsel,) for petitioner.

OSCAR E. CARLSTROM, Attorney General, and BAYARD
L. CATRON, (ALBERT D. RODENBERG, of counsel,) for re-
spondents.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an original petition for *mandamus* seeking to
compel the State primary canvassing board to certify the
petitioner as a nominee of the republican party for the sixth
senatorial district as a candidate for the office of representa-

tive in the General Assembly, to appear on the ballot at the general election held November 6, 1928. Petitioner alleges that he made a demand on the Secretary of State to issue to him a certificate of nomination, and that such demand was refused on the ground that the senatorial committee of the republican party for the sixth senatorial district had filed in the office of the Secretary of State on the 10th of March, 1928, a resolution adopted in accordance with the provisions of an act entitled, "An act to provide for the holding of primary elections by political parties for the nomination of members of the General Assembly and the election of senatorial committeemen," approved July 6, 1927, by which it had determined that but two candidates for representatives in the General Assembly from said senatorial district, representing the republican party, shall be nominated at the primary election to be held on the 10th day of April, 1928. Petitioner avers that the resolution was null and void and of no effect, but that the Secretary of State and members of the State primary canvassing board nevertheless recognized such resolution as their authority to issue but two certificates of nomination and to certify the two candidates highest in votes for said office. Petitioner avers that he is the third highest candidate in the total vote cast at such primary, and that he is entitled to have his name certified as a candidate at the general election for the reason that the section of the act referred to in the resolution of the senatorial committee is unconstitutional, null and void. Respondents demurred to the petition, and thus an issue of law is made.

The petition in this cause was not filed in time to permit this court, with its other duties, to decide the issues involved in sufficient time to direct the primary canvassing board to certify the name of the petitioner in case the writ be awarded, and so the cause has become moot as to him.

After an election has been held the title to the office of the successful candidates cannot be affected by a decision

holding invalid the law under which the nominations were made. (*People* v. *Strassheim*, 240 Ill. 279; *Schuler* v. *Hogan*, 168 id. 369.) While ordinarily this court will not consider a cause under such circumstances, we deem certain questions of law involved of sufficient public importance to justify this court in taking the case and considering those questions.

It is contended by petitioner that the Legislative Primary act of 1927 embraces two subjects, both of which are expressed in the title and body of the act, and therefore violates that provision of section 13 of article 4 of the constitution that "no act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." The title of the act is, as we have seen, "An act to provide for the holding of primary elections by political parties for the nomination of members of the General Assembly and the election of senatorial committeemen." The purpose of these provisions of section 13 of the constitution is to prevent joining in one act unrelated matters. All matters may properly be included in an act which are germane to the title, and those matters may be included in the title which relate to the same general subject. (*People* v. *Kramer*, 328 Ill. 512.) It is evident from reading the various provisions of the act of 1927 that it is designed to accomplish the nomination of legislative candidates. The provision for senatorial committeemen is but a part of the scheme to effectuate that purpose. The act is not open to this objection.

The principal question for consideration arises on the contention that section 11 of the act is invalid. That section provides as follows: "At least thirty-three (33) days prior to the date of the April primary the senatorial committee of each political party shall meet and by resolution fix and determine the number of candidates to be nominated by their party at the primary for representative in the General Assembly. A copy of said resolution, duly certified by the chairman and attested by the secretary of the commit-

tee, shall, within five days thereafter, be filed in the office of the Secretary of State, and in the office of the county clerk of each county in the senatorial district. In all primaries for the nomination of candidates for representatives in the General Assembly each qualified primary elector may cast three votes for one candidate, or may distribute the same or equal parts thereof among the candidates, as he shall see fit. And the said candidate or candidates for nomination highest in votes shall be declared nominated for the office to be filled."

It is contended, first, that this is a delegation of legislative power to the senatorial committee, and section 11 is for that reason invalid; second, that it violates section 18 of the bill of rights, providing equality in elections; and third, it is contrary to the provisions of sections 7 and 8 of article 4 of the constitution, concerning the election of representatives in the General Assembly.

In *Rouse* v. *Thompson*, 228 Ill. 522, this court considered the objection first raised to this section—that is, that as it authorizes the senatorial committee of political parties to determine the number of candidates for representative it is a delegation of legislative power to such committee. It was there held that a similar section of the Legislative Primary act there under consideration was not a delegation of legislative power to such committee, as the right to determine whether a political party will nominate one or more candidates for representative in the General Assembly is a political right of the party and not a legislative matter, and must necessarily be left, with many other questions pertaining to party management, to the managing committees or conventions of the several parties of the State. It was in that case held, however, that the Primary act, relating to the nomination of representatives in the General Assembly, must permit the individual voter of the party to participate in the nomination of all the candidates of his party for such office who are to be nominated by his party. Political parties

are voluntary organizations, with inherent powers of self-government. Primary laws do not confer power on political parties to make nominations but are a regulation of the exercise of the power to nominate. (*People* v. *Kramer, supra; People* v. *Brady,* 302 Ill. 576.) Section 11 is not open to this objection.

It is also argued that section 11 violates the provision of section 18 of the bill of rights, guaranteeing to electors freedom in elections, in that it does not comply with sections 7 and 8 of article 4 as to the manner of electing representatives. Section 18 of article 2 of the constitution requires that all elections be free and equal. This has been held by this court to mean that every qualified voter may freely exercise the right to cast his vote without restraint or coercion of any kind, and that his vote, when cast, shall have the same influence as that of any other voter. (*McAlpine* v. *Dimick,* 326 Ill. 240; *People* v. *Fox,* 294 id. 263; *Rouse* v. *Thompson, supra; People* v. *Election Comrs.* 221 Ill. 9.) Sections 7 and 8 of article 4 of the constitution provide as follows: "The house of representatives shall consist of three times the number of the members of the senate, and the term of office shall be two years. Three representatives shall be elected in each senatorial district at the general election in the year of our Lord 1872, and every two years thereafter. In all elections of representatives aforesaid, each qualified voter may cast as many votes for one candidate as there are representatives to be elected, or may distribute the same, or equal parts thereof, among the candidates, as he shall see fit; and the candidates highest in votes shall be declared elected."

These sections provide what is known as "minority representation" in the General Assembly. The effect of section 18 of the bill of rights, as applied to a primary, came first to be considered in *People* v. *Election Comrs. supra,* where the Primary act of 1905 was attacked. It was there held that a primary must be considered an election within

the meaning of that word as used in the constitution; that the right to choose candidates for public offices, including representatives in the General Assembly, whose names will be placed on the official ballots, is of precisely the same nature and governed by the same constitutional provisions as the right to vote for the candidates when nominated. In *Rouse* v. *Thompson, supra,* the Legislative Primary act of 1906, known as the Delegate Primary act, was held invalid because it provided that the county central committee could nominate candidates to fill vacancies where a special election was necessary. The act also provided for the nomination, by primary, of one candidate for representative in the General Assembly, and authorized the nomination of others, if desired, by county convention without reference to the primary vote. This provision was also held void because it infringed the right of the individual voter to participate in the nomination of all the candidates of his party for the legislature who were to be nominated by his party. It was there again stated, following *People* v. *Election Comrs. supra,* that a primary election is an election within the provision of the constitution as to freedom of elections.

In *People* v. *Strassheim, supra,* this court considered a *habeas corpus* action attacking the validity of the Primary act of 1908. It was again reiterated, following *People* v. *Election Comrs. supra,* that a primary election is an election to which all the provisions of the constitution apply, and a section somewhat similar to section 11 of the present act was held invalid for the reason that it violated the constitutional right of a voter in a primary for the nomination of representatives in the General Assembly to cast his vote as in the general election for those offices,—*i. e.,* the right of cumulative voting. The matter came on again in the case of *People* v. *Deneen,* 247 Ill. 289, where the Legislative Primary act of 1909 was attacked. Section 11 of that act was similar to the one under consideration here. The opinion of Chief Justice Vickers and Justices Farmer and Cooke

held the act invalid because said section gave to the senatorial committee of a political party power to restrict the number of legislative candidates whom the voters of the party might nominate, which action deprived the voters of their contitutional right at such primary to cast three votes for one candidate or distribute the same among two or three candidates, as they saw fit. It was also held that any law which would require the names of three candidates of such party to be placed on the ballot at the general election if three had been voted for by any voter at the primary, would be equally unconstitutional and void as destructive of the plan of minority representation provided by sections 7 and 8 of article 4 of the constitution. In a special concurrence Mr. Justice Hand expressed the view that the sections involved were not void for the reason given in the opinion but considered the act void for other reasons not involved in the question now under consideration. Justices Cartwright, Carter and Dunn, while expressing the view that if the section of the act referred to were given the construction placed on it by the opinion it would be unconstitutional, construed the section as only authorizing a suggestion by the senatorial committee to members of the party concerning the number of legislative candidates to be nominated. It was again said in *People* v. *Fox, supra,* and *McAlpine* v. *Dimick, supra,* following *People* v. *Election Comrs. supra,* that a primary is an election, within the purview of the constitution, governing the right of the voter in a general election for representative in the General Assembly, and that such right must be extended to every voter in a primary.

If, as stated in *People* v. *Election Comrs. supra,* and the later cases following it, a legislative primary is an election in the sense that every voter must be given the right to vote for three candidates, as he is entitled to do at a general election, it seems clear that we must say that it is impossible to devise a valid scheme for the nomination of candidates for representatives in the General Assembly by pri-

mary, for the reason that such a method of nomination will, at all events, result in the nomination of three candidates for each party, and thus render nugatory the provisions of sections 7 and 8 of article 4 of the constitution, designed to secure minority representation. Under this view any primary law by which candidates for the legislature are to be nominated by ballot will be of no avail, for the reason that the voter may, and, as common knowledge shows, some invariably will, vote for, and thus nominate, three candidates. This result will arise though the Primary act be construed to confer on the senatorial committee power only to suggest the number of candidates. This will occur notwithstanding the constitutional provision for minority representation. Thus, despite the fact that the constitution is wholly silent on the subject of nominations by political parties or their regulation, no valid legislative primary under this view is possible.

Political parties had birth in this country as a result of differences of opinion arising in the second session of the first Congress of the United States, in 1790, over Alexander Hamilton's plan to fund the indebtedness of the various States incurred before and during the Revolution. They have always represented a divergence in thought in governmental policy. Their influence and importance have grown until they are to-day a necessary adjunct to representative government, yet there is no constitutional or statutory requirement that there be political parties but it has always been recognized that they are voluntary organizations, possessing inherent powers of self-government. To such powers the determination of the number of candidates the party shall present for election indubitably belongs. They have for many years exercised that power and it has been recognized by legislatures and by courts. The act of nominating candidates is first a party matter. Primary laws are, and have been, recognized as measures for the regulation of nominations by political parties and do not attempt to com-

pel nominations. These acts recognize the importance of primaries and have provided that they shall be conducted along the lines of general elections. The acts provide booths, ballots, judges and clerks at public expense and assure secrecy in voting. To the extent to which they purport so to do they have taken from political parties the control of methods of making nominations and methods of arranging for party government. They do not affect party government, however, beyond the provisions of such acts. By such acts alone does the State government regulate political party nominations. The constitution is silent on the subject. Unless, therefore, a primary act contravenes some constitutional inhibition it is supreme to the extent of its provisions. Beyond those provisions political parties are free to act as they will. The General Assemblies of this State have from time to time enacted primary laws. They have generally attempted to comport with the views of this court as to the validity of such acts in so far as the same have been expressed. To say that a statute may not, within the constitution, regulate that which may be legally done without a statute on the subject is to admit the weakness of government. These undoubted deductions, it seems clear, require a further consideration of the question whether a legislative primary is an election of the same kind and character as a general election for that office and in which the same constitutional privileges must be accorded the voter. It cannot be doubted that sections 7 and 8 of article 4 of the constitution, providing for cumulative voting, were designed to insure minority representation. The debates of the constitutional convention of 1870 show that prior to that time in all parts of the State it was impossible to elect a member of the minority party of the various districts to the lower house of the General Assembly. (1 Debates of Const. Convention, 561.) It was considered by the representatives of all parties in that convention that minority representation was of greatest importance to representative

State government and that it would be secured by the adoption of those sections. (2 id. 1726.) That result, it was thought, would be brought about by the privilege afforded the voter at the general election for representatives in the General Assembly to cumulate his vote. Those sections in terms apply to such an election. The nomination of candidates for representative is not mentioned in the language there employed. That language and the debates in the constitutional convention show that the nomination of candidates for such office was not considered. A primary for the nomination of candidates was entirely unknown. The purpose in the minds of the framers of those sections was to secure minority representation. The means of carrying that purpose into effect was the general election of representatives to office. This being true, it is the duty, not only of the legislature and the courts but of the citizens as well, to see that this purpose of the constitution is not defeated. It follows that any regulation of the nomination of candidates for such office, whether by primary or convention, must not prevent minority representation in the lower house of the General Assembly. If candidates for the legislature may not be nominated by the primary without violating this constitutional provision they must be nominated by some other means.

It is conceded, as we have seen and as it must be, that without a primary law the power rests in political parties to nominate less than three legislative candidates. That power is not given by statute but is at all times recognized as inherent in political parties. A statute does not confer a power which exists without such statute. If no primary law existed a member of a political party would have no right to insist on the nomination of three candidates for the legislature as against the will of his party as expressed by its committee or convention, but it is supposed that he must be accorded that right in a primary, not because it

is a different nomination to office, for it is a nomination to the same office, but because we have held that a legislative primary is an election, in which all of the privileges accorded to the voter in a general election of such officers must be his.

What, then, is there in a legislative primary law that prevents the furtherance of the purpose of minority representation? Experience so general as to be within the borders of common knowledge has shown that the only means by which minority representation can be assured is by one or both of the opposing parties nominating less than three candidates. Such a plan does not violate but accords with the constitution. Section 11 of the Primary act under consideration does not violate the letter or the spirit of the constitution in that particular. On the contrary, it accords with it. It does not attempt to take away from political parties the opportunity to nominate less than three legislative candidates but provides such opportunity. It does not specify how many candidates shall be nominated but provides that the senatorial committee of and for the political party may determine that matter. The provisions of this section do not run counter to the principles of representative government but are in furtherance of those principles. There is no express provision in the constitution giving to the voter in a legislative primary the right to cast his vote for one, two or three candidates for the legislature, as he chooses. The constitution does not afford to a single member of a party the right to determine how many candidates for the legislature his party shall present. Obviously, if he must be afforded that right his vote is more powerful than the will of his party, expressed through its representatives, concerning that matter, although such is a question of party policy.

But it is said, if a political party be permitted, through the action of its senatorial committee, to nominate less than

three candidates the voter may by that means be deprived of the right to choose three at the election, for if there are but three candidates presented at the election, casting his vote there is but a perfunctory act. He has the right under the constitution to vote for three at the election for such legislative officers. He, however, exercises no choice if there are but three candidates presented. Do the constitutional provisions for minority representation demand that the voter be allowed to vote for three candidates at the general election from a field of more than three? There is nothing in their language so requiring. If those sections are to be construed to mean that the voter must in all cases be given such right, such construction would in many instances defeat the admitted purpose of minority representation, and no method of nominating such candidates, whether by convention or by primary, could be devised to carry out that purpose. Nominations by the' majority party, at a convention, of two candidates and by the minority party of one, as has been done for many years, would likewise deprive him of an opportunity of so choosing. It is evident from the language of these sections of the constitution and the debates in the constitutional convention that the privilege of voting for three at the general election is not to be construed to mean, necessarily, the right to choose three from a larger number, and there is no basis in the constitution for such a claim of right. It seems clear from these considerations that there is nothing in these features of the act which tends to deprive the voter at the general election of his constitutional rights.

Whether a primary is an election in the strict sense of the term has been considered by the courts of other States. But two States, so far as we are advised, hold the view that a primary election is to be considered as subject to all constitutional limitations and guaranties affecting a general election. Such was, in effect, held in *Spier* v. *Baker,* 120 Cal. 370, 52 Pac. 659, decided in 1898, and *Johnson*

v. *Grand Forks County*, 16 N. D. 363, 113 N. W. 1071, decided in 1907. In *In re Jamestown Caucus Law*, 112 Atl. (R. I.) 900, the Supreme Court of Rhode Island held that an election within the purview of the constitution does not refer to the selection of candidates for political parties as in that act provided, but refers to the final act of the voters in casting their ballots in the election of officers. In *State v. Woodruff*, 68 N. J. L. 89, 52 Atl. 294, it was said that "a primary is not an election in the sense of the common law," and an indictment in that case was quashed on the ground that there was no statute making fraud at a primary a crime. In *State v. Drexel*, 74 Neb. 776, 105 N. W. 174, decided in 1905, it was held that an act making the right of an elector to participate in a primary election depend upon his party affiliation was a valid exercise of legislative power and in no way conflicted with the constitution guaranteeing freedom in the exercise of elective franchises. In *Ladd v. Holmes*, 40 Ore. 167, 66 Pac. 714, decided in 1901, it was held that a primary act which added qualifications in addition to those provided by the constitution imposed no restraint on the electors nor denied them the privilege of equality in the election, as provided by the constitution. In *McLain v. Fish*, 251 S. W. (Ark.) 686, it was urged that the primary law of the State was a restriction upon the constitutional qualifications of voters at elections. It was held, however, that constitutional provisions with respect to voters do not apply to party primaries; that primary elections were unknown at the common law and are purely creatures of the statute. In *State v. Michel*, 121 La. 374, 46 So. 430, decided in 1908, it was considered that a primary is a part of the election machinery of the State but that the additional requirements for voting do not render the statute invalid; that it is the essence of a primary that only those have the right to participate in it who are in sympathy with the ideas of the political party by which the primary is being held; that a primary is a means of ex-

pressing party preference; that if there could not be a primary under the constitution, with qualifications of voters other than those fixed by the constitution for a general election, such primary would be impossible. In *Ledgerwood* v. *Pitts,* 122 Tenn. 570, 125 S. W. 1036, it was held that constitutional provisions granting the right of suffrage at a general election had no application to primary elections; that a primary is simply a substitute for a caucus or convention; that while it is a part of the Election law, the limitations of the constitution as to qualifications of electors apply to the final election when the officer is chosen, and that primaries are not in reality elections but are nominating devices. In *Hanna* v. *Young,* 84 Md. 179, 35 Atl. 674, it was held that the word "election" in the suffrage clause of the constitution of that State prescribing qualifications to vote "at all elections," includes the elections which the constitution itself requires to be held or which it has directed the legislature to provide for. In *Montgomery* v. *Chelf,* 118 Ky. 766, 82 S. W. 388, it was said: "The constitution nowhere makes provision for holding primaries. Therefore if the word 'election,' as used in the constitution, includes primary elections, the constitution effectually prohibits the holding of primary elections at all." In *State* v. *Felton,* 77 Ohio St. 554, 84 N. E. 85, a primary act was attacked on the ground that it superadded qualifications to those prescribed by the constitution and deprived the voter of constitutional rights. It was held, however, that a primary election held merely to name the candidates of a political party is not an election within the meaning of the section of the constitution concerning legal qualifications of voters. In *State* v. *Coburn,* 168 S. W. (Mo.) 956, it was held that the constitution had no reference to primary elections; that the word "elections," as used in the constitution of that State, has reference to choosing a person or persons for office by vote and does not appear in the sense of nominating a candidate for office by a political party. In *Kelso*

v. *Cook,* 110 N. E. (Ind.) 987, it was held that an election under a primary law there considered did not contravene the section of the bill of rights permitting voting by electors at all elections; that a radical difference exists between an election of public officers and a primary election to select candidates for office; that a primary election was not included under the term "all elections;" that to assume that the constitutional guaranty as to voting at all elections must apply to primaries is to hold that there can be no party primary; that the words "primary election" mean the act of choosing candidates by the respective political parties to fill various offices, and that the word "election" is understood to mean the final choice of the electors to fill the offices. In *Newberry* v. *United States,* 256 U. S. 232, 41 Sup. Ct. 469, it was said that primaries "are in no sense elections for an office but merely methods by which party adherents agree upon candidates whom they intend to offer and support for ultimate choice by all the qualified electors. General provisions touching elections in constitutions or statutes are not necessarily applicable to primaries. The two things are radically different." To the same effect is *Commonwealth* v. *Wells,* 110 Pa. 463, 1 Atl. 310.

A primary election may be said to be within the purview of the constitution only so far as it has to do with or affect rights guaranteed by the constitution. A primary law is a part of the election laws, but it is an election only in a qualified sense. At an election as contemplated by the constitution all voters bearing constitutional qualifications may freely vote, under circumstances and provisions that will accord to each voter the same influence as that exerted by any other voter voting at that election. While at a primary each voter by his vote exercises the same influence as any other voter voting at that election and this guaranty of the bill of rights is not violated, it is obvious that a primary cannot be said to be an election in the sense that all voters bearing constitutional qualifications may vote

thereat, for the simple reason that not all persons bearing such qualifications at the time and place of the primary are entitled to participate therein but it is of the essence of a primary that it shall be participated in only by members of the party holding it. If a primary be considered subject to all constitutional guaranties afforded an elector at a general election, then an act requiring party affiliation as a qualification violates such guaranties by superadding qualifications not required by the constitution, for no such qualification is required of the voter at a general election, yet no one will at this day contend that such additional qualifications may not be imposed. Again, the elector may at a general election, from among the candidates of the various parties appearing on the ballot, choose for whom he will vote, while at a primary he may vote only for candidates who are members of his own party. A general election is in obedience to the mandate of the constitution, or of a statute authorized by it, that certain officers be elected at certain times, and that all qualified voters of the district or county or of the State shall be permitted to participate in such election, while a primary law casts no obligations on parties to nominate, though if they do nominate they are required to do so according to the regulations of the Primary act. It must be said, therefore, that a primary is an election only in the qualified sense that it is moulded, in general, on the plan of an election and is conducted as an election is conducted, but for the purpose, only, of selecting candidates of a political party, with the right in no one else to participate therein. So considered, a statute providing that a committee of a political party may determine the number of candidates of that party for representatives in the General Assembly, and giving equal voice to all qualified members of that party to select, at a primary, candidates to the number so determined upon, does not violate the constitutional provisions governing elections and is not invalid.

Upon further consideration of the question, therefore, we are of the opinion that the view expressed in *People* v. *Election Comrs. supra,* should no longer be adhered to.

Section 11 of the Primary act is to be construed in its entirety. All its language must be employed to determine its meaning. So considered it expresses the legislative intent that the right of the voter to vote for three candidates in a legislative primary is subject to the power of the senatorial committee of his party to determine that less than three shall be nominated. He has three votes. He may give three votes to one candidate or may divide them as he sees fit in the selection of the number of candidates his party is to nominate. The language, "and the candidate or candidates for nomination highest in votes shall be declared nominated," when taken with the provision that the senatorial committee shall determine the number of candidates to be nominated, shows plainly the legislative intent that the highest in votes who shall be declared nominated shall be the number of candidates highest in votes, as theretofore determined by the senatorial committee. In this case the senatorial committee of the republican party determined upon the nomination of but two candidates for the legislature. This it had a right to do. The act is not subject to the constitutional objections urged. The former decision of this court on this point in *People* v. *Election Comrs. supra,* and the cases decided by this court following that case, in so far as they are in conflict with the views herein expressed, are overruled.

It is not necessary to consider other questions raised by respondents.

The writ is denied. *Writ denied.*

FARMER and DUNN, JJ., dissenting.