THE PEOPLE *ex rel.* A. W. Kell, Petitioner, *vs.* PAUL W. KRAMER, County Clerk, Respondent.

*Opinion filed February 3, 1928.*

1. CONSTITUTIONAL LAW—*general rule as to when act is void as embracing two subjects.* All matters may properly be included in an act which are germane to the title, and those matters may be included in the title which relate to the same general subject, but if an act embraces two unrelated subjects and both are expressed in the title the entire act must be declared void, as the court is powerless to elect between the two subjects so as to save one and reject the other.

2. WORDS AND PHRASES—*meaning of the word "germane."* The word "germane" means "akin" or "closely allied."

3. ELECTIONS—*Primary act of 1927 is not void as embracing two unrelated subjects.* The Primary act of 1927, "to provide for the making of nominations by, and the organization of, political parties," does not violate section 13 of article 4 of the constitution as embracing two subjects in the title, as the organization of political parties as provided for in the act is for the purpose of bringing about the nomination of candidates and is a necessary part of that plan, and the act makes no further provision in regard to the management and work of political parties but expressly recognizes their usual powers and duties.

4. SAME—*what is a political party.* A political party is a voluntary association or organization made up of a group of electors united to promote certain political views or opinions, which they seek to make effective by nominating and electing to public office members of their party.

5. SAME—*right of political parties to nominate candidates is a privilege subject to regulation by legislature.* The right of political parties to make nominations is not a right enumerated in the constitution but is a political privilege which may be regulated by the legislature, and in the absence of such regulation it is exercised in accordance with the will of members of the party concerned, as expressed by the rules, customs or conventions of the party.

6. SAME—*committeeman of political party is not a public officer.* A committeeman of a political party is not a public officer, nor does such committeeman represent the public at large or exercise any of the sovereign powers of the State, but he represents the members of his party and is accountable to them, alone.

7. SAME—*Primary act of 1927 is not invalid in failing to provide for filling vacancies in ranks of committeemen.* The Primary act of 1927 is not invalid in failing to make provision for filling vacancies in the case of the death, resignation or removal of precinct or State central committeemen, as such vacancies may be filled in accordance with the rules, usages and customs of the party; and the voting strength of a committeeman so chosen to fill a vacancy may be determined, under section 57 of the act, by reference to the record in the county clerk's office of the number of votes cast in the precinct for the committeeman whose place he fills.

8. SAME—*Primary act of 1927 provides equal voting strength of committeemen.* The Primary act of 1927 provides for equal voting strength of precinct committeemen notwithstanding a change in the precinct by the formation of new election districts under section 30 of the Election law, as it is provided in paragraph (*f*) of section 10 of the act that the voting strength of a committeeman, as determined under section 9, shall remain the same during his term of office, regardless of any change in his precinct.

9. SAME—*amendment of City Election law in 1927 repeals provision of Primary act requiring registration of voters.* The Primary act of 1927 is not subject to the objection that it fails to provide equality of elections in requiring that electors and precinct committeemen must be registered voters in a precinct whereas no provision is made in any statute for registration of voters in cities of more than 200,000 inhabitants, as the general requirement of registration is repealed by implication by the amendment of July 7, 1927, to the City Election law, which became a law the day after the Primary act of 1927 became effective and which limits the requirement of registration to cities of less than 200,000.

10. SAME—*what provisions of Primary act of 1927 are not inconsistent.* Paragraph (*f*) of section 9 of the Primary act of 1927, providing that committees shall not delegate their powers or functions to any other person, is not inconsistent with the provision of paragraph (*a*) of section 10 that committeemen in a county convention shall choose delegates to the State convention of their party, as the choosing of such delegates is an exercise of one of the powers of committeemen in the county convention and is not a delegation of power.

11. SAME—*section 11 of Primary act is impracticable and void but does not render entire act void.* Section 11 of the Primary act of 1927 is invalid in affording privileges to the voter of a minority party in cities adopting minority representation that it does not afford to the voter of a majority party in such city, and as being impracticable of operation in that there is no method by which the

328—33

voting strength of the municipal central committee is to be limited in all cases to a voting power derived from votes cast by voters living within the city; but the invalidity of section 11 does not render the entire act void.

12. SAME—*Primary act of 1927 is not invalid in recognizing existing committeemen.* The provision of paragraph (*g*) of section 9 of the Primary act of 1927 recognizing "political party committees now in existence" is not invalid because of the invalidity of the Primary act of 1910, under which said committees were organized, as the provision of the act of 1927 does not purport to validate such committees but is a designation of specified persons to act as committeemen until a new committee is formed.

13. STATUTES—*when act takes effect upon approval by Governor.* Where an act is signed by the Governor after the first of July of the year in which it is passed it becomes a law and takes effect when signed.

14. SAME—*adoption of general law by reference includes subsequent modifications.* An act which adopts by reference the whole or a portion of another statute adopts that statute or such portion as it exists at the time of such adoption, and does not include subsequent additions or modification of the statute adopted unless it does so by express or strongly implied intent; but where the adopting statute makes no reference to a particular statute by title or description but refers generally to the law relating to the subject treated, such adoption by reference will include not only the law in force at the date of adopting the act, but also such amendments of the law as are in force when action is taken or a proceeding resorted to under such law.

15. SAME—*when later act repeals former by implication.* Two statutes enacted during the same session of the legislature should receive such construction, if possible, as will give effect to each, but where the parts of one of such acts are inconsistent with and repugnant to parts of the other, so that all parts of both acts can not be reconciled, the later act must be taken as a repeal by implication of the inconsistent portions of the act first passed.

DUNN, FARMER and THOMPSON, JJ., dissenting.

ORIGINAL petition for *mandamus.*

OSCAR E. CARLSTROM, Attorney General, MONTGOMERY S. WINNING, S. S. DUHAMEL, and EDWARD C. FITCH, for petitioner.

CHARLES F. DEW, State's Attorney, (WILSON & WIL-
SON, of counsel,) for respondent.

HENRY A. BERGER, and GEORGE C. DIXON, *amici curiæ.*

Mr. JUSTICE STONE delivered the opinion of the court:

This is an original petition for *mandamus* in this court
filed on leave granted, praying that the respondent, as
county clerk of the county of Marion, be commanded to do,
at the time and in the manner prescribed by law, all things
required to be done and performed by county clerks in
preparation for and the holding of a primary election on
the second Tuesday of April, 1928, under the provisions of
an act entitled, "An act to provide for the making of nomi-
nations by, and the organization of, political parties," ap-
proved July 6, 1927.   The petition recites that the county
clerk has announced that on legal advice he will not comply
with said Primary law because he is informed that the law
is unconstitutional and void, and that he, as county clerk,
has no right to incur bills or liabilities against the county
in the preparation for or conduct of such primary election.
The respondent has filed a general and special demurrer to
the petition, alleging the invalidity of the Primary law of
1927, and various grounds are set out in support of the
demurrer.

It is first contended that the act violates section 13 of
article 4 of the constitution of this State, in that the title
of the act expresses more than one subject and the body of
the act contains provisions covering more than one subject.
In support of this ground of demurrer it is urged that there
is no proper relationship existing between the nomination
of candidates of political parties and the organization of
political parties.   It is established that if an act of the legis-
lature embraces two subjects and both are expressed in the

title the entire act must be declared void, as the court is powerless to elect between the two subjects so as to save one and reject the other. (*Michaels* v. *Hill, ante,* p. 11; *Sutter* v. *People's Gas Light Co.* 284 id. 634; *People* v. *Nelson,* 133 id. 565.) The rule is that all matters may properly be included in an act which are germane to the title, and those matters may be included in the title which relate to the same general subject. *Michaels* v. *Hill, supra.*

It is urged by the respondent that the making of nominations by political parties and the organization of political parties are two subjects unrelated and not germane. "Germane" means "akin" or "closely allied." (*Dolese* v. *Pierce,* 124 Ill. 140.) A political party is a voluntary association or organization made up of a group of electors united to promote certain political views or opinions, which they seek to make effective by nominating and electing to public office members of their party. A primary law does not confer upon political parties the power to nominate candidates but recognizes such power existing in them and prescribes the manner in which it shall be exercised. The various provisions of the act show an intention to provide for a primary election at which political parties shall nominate their candidates for office. The act prescribes certain regulations to bring about a free and equal election, as required by the constitution. By certain of its provisions precinct committeemen are elected who are made members of the county central committee. One of their duties is to select delegates to the State convention. These delegates nominate candidates for electors and trustees of the State University and select delegates at large to the national convention in accordance with the provisions of the act. The county central committees, which select the delegates to the State convention, must, by reason of the nature of the business of selecting such delegates, be first organized in such a manner as to enable them to discharge that function. This necessity is met by provisions of the Primary law directing that they

shall be organized into a county convention. It at once becomes clear that the nomination of certain candidates under the Primary law involves, as a necessary preliminary step, the organization of the party machinery.

It is argued that political parties, when organized, discharge functions other than nominating candidates, such as writing platforms, managing and conducting general elections, and the like, and that these functions are not germane to the purpose of nominating candidates. The organization of political parties as provided in the act is for the purpose of bringing about the nomination of candidates. The Primary law makes no provision for conducting general elections, managing campaigns, or the discharge of other functions of political parties. Nor does it require that committeemen, when organized, shall do so. These powers are inherent in political organizations and exist regardless of statute. This is recognized by the Primary law, which by paragraph (f) of section 9 reserves to the committees and their officers "the powers usually exercised by such committees and by the officers thereof" not inconsistent with the act, and by paragraph (d) of section 10 reserving to conventions the power to "perform all other functions inherent to such political organization" and not inconsistent with the act. The only exercise of power referred to in the act which may not be said to be an act directly in furtherance of the scheme or plan to nominate candidates is that mentioned in paragraph (b) of section 10, which is "to adopt any party platform." This provision is not a regulation or direction but is an attempt to confer a power already inherently existing in political parties. The act in nowise attempts to limit or regulate such power. Such a provision cannot be said to render the title or act double. The only regulations in the act concerning party organization are there for the purpose of bringing about the nomination of candidates. The constitution requires that the subject of the act be expressed in the title and that the title

contain but one subject. It seems clear that the organization of political parties is a necessary part of the scheme to accomplish the nomination of candidates and is so closely allied with it as to be germane to the central purpose expressed in the title. These matters are germane one to the other, and the title expresses but one subject. The act is not therefore open to the objection urged. *People* v. *Strassheim,* 240 Ill. 279; *Rouse* v. *Thompson,* 228 id. 522.

It is also objected that the Primary law violates section 18 of article 2 of the constitution of Illinois, insuring freedom of elections, because it fails to make provision for filling vacancies in the case of the death, resignation or removal of precinct or State central committeemen. It is conceded by the relator that there is no provision in the act for filling such vacancies on the county committees or the State central committee, but it is urged that such is a power inherent in a committee itself, representing the party, and, the legislature not having provided otherwise, a right exists to fill these vacancies by such means as the committee may adopt. The respondent, on the other hand, contends that while it is true that certain inherent powers ordinarily exist in political parties, yet in the instant case the legislature has by the Primary law taken over the control of all activities of political parties so that none of their inherent powers remain, and so no power to fill vacancies on the county committees or State committee exists anywhere. Provisions of the Primary law which may throw light upon the matter are as follows: Paragraph (*f*) of section 9 of the act provides: "Each committee and its officers shall have the powers usually exercised by such committees and by the officers thereof, not inconsistent with the provisions of this act." Paragraph (*d*) of section 10 of the act provides: "Each convention may perform all other functions inherent to such political organization and not inconsistent with this act." Political parties were organized and in existence prior to the enactment of any statutory regulation thereof. The

right of political parties to make nominations is not a right enumerated in the constitution but is a political privilege which may be regulated by the legislature, and in the absence of such regulation is exercised in accordance with the will of members of the political party concerned, as that will is expressed through the rules, customs, conventions or caucuses of such political organization. Constitutional provisions or inhibitions arise only where the legislature, in attempting to regulate the nomination of candidates, violates such provisions. A committeeman is not a public officer. The position carries with it no salary, fees or emoluments. The incumbent is not required to give a bond or subscribe to an oath, as required by section 25 of article 5 of the constitution, nor do the committeemen represent the public at large or exercise any of the sovereign powers of the State. They represent the members of the political parties and are accountable to them alone. *People* v. *Brady,* 302 Ill. 576; *Winston* v. *Moore,* 244 Pa. 447, 53 L. R. A. (n. s.) 1190.

The question of the inherent power of committeemen to fill vacancies on committees has not previously been considered by this court but it has received consideration in other States under constitutional and statutory provisions similar to ours. In *People* v. *Kings County Republican Central Committee,* 63 N. Y. App. Div. 438, this question was considered, and it was there held that in the absence of statutory provisions regulating the matter the republican general committee of Kings county had a right to adopt rules providing for the filling of vacancies caused by death, resignation or removal of a member thereof, and that this power of the committee is inherent in political parties. This was the one point involved in the case, and the decision of the New York Appellate Division was affirmed by the New York Court of Appeals without a written opinion. (168 N. Y. 639.) In *Mills* v. *Stewart,* 210 Pac. (Mont.) 465, it was held that in the absence of legislative enactment a

political party is governed by its own usages and establishes its own rules. To the same effect are *Davis* v. *Hambrick,* 58 S. W. (Ky.) 779, *Davidson* v. *Hanson,* 87 Minn. 211, and *Morrow* v. *Wipf,* 22 S. D. 146, 115 N. W. 1121.

It is argued that to fill such a vacancy in any other way than by an election would deprive the party members in such precinct of the right to select such committeemen. It is a sufficient answer to say that it does not necessarily follow that the members of the party in such precinct may not have a voice in filling such vacancy, as this can be done in any manner conformable to the rules, usages and practices of such party.

We are unable to agree with the contention of counsel for the respondent that the legislature has taken over entire control of all the activities of political parties by the Primary law. The provisions of sections 9 and 10 that each committee and its officers shall have the powers usually exercised by such committees and their officers not inconsistent with the provisions of the act, and that each convention may perform all other functions inherent to such political organizations not inconsistent with the act, demonstrate that it was not the intention of the legislature to take over and regulate all inherent rights and powers existing in political parties, but that, on the other hand, the parties are left to the exercise of those privileges not expressly regulated by the law.

It is also argued by counsel for the respondent that it would be impossible to determine the voting strength of one appointed to fill a vacancy, as no record is required to be kept of the voting strength of committeemen elected. Section 57 of the act provides that the county clerk shall issue a certificate of election to each person shown by the returns to be elected a precinct committeeman. This certificate is required to state the number of ballots voted in his precinct by the primary electors of his party at the primary at which he was elected. Section 57 also requires that the canvass-

ing board file with the proper clerk or the Secretary of State, as the case may be, the result of the official canvass. As the clerk must state, in his certificate to the committeeman elected, the number of votes cast at the primary election at which such committeeman was elected, it is evident that the proclamation of the canvassing board filed with the county clerk must show the number of votes cast. That fact thereby becomes a matter of record in the office of the county clerk. One selected to fill a vacancy would, of course, have the powers, and only the powers, of the committeeman whose place he takes. The records of the county clerk's office give the necessary information as to voting strength, which is the same as shown in the certificate issued to the originally elected committeeman for that precinct. We are of the opinion, therefore, that in cases of a vacancy on State or county committees caused by the death, resignation or removal of a member thereof, such vacancy for the unexpired term of the member whose death, resignation or removal has caused the same may be filled according to the rules and usages of the party. This objection, therefore, cannot be sustained.

It is also objected that the Primary law violates section 18 of article 2 and section 1 of article 7 of the constitution, providing for freedom of elections in other respects. Among the provisions objected to on this ground are those defining the tenure of office and the voting strength of the precinct committeeman. Paragraph (c) of section 9 of the act provides: "In the organization and proceedings of the county central committee each precinct committeeman shall have one vote for each ballot voted in his precinct by the primary electors of his party at the primary at which he was elected." Paragraph (f) of section 10 of the act provides: "All precinct committeemen when elected as herein provided shall serve as though elected at large irrespective of any changes that may be made in precinct boundaries and the voting strength of each committeeman

shall remain as herein provided for the entire time for which he is elected." Section 30 of the act in regard to elections (Cahill's Stat. 1927, p. 1107,) provides that the county board of each county shall at its regular meeting in June or an adjourned meeting in July, divide the election precincts which contain more than 800 voters into election districts, so that each district shall contain, as near as may be practicable, 500 voters, and not more, in any case, than 800. The act provides that polling places shall be fixed within these election districts, at which places all general and special elections shall be held. The respondent urges that because of the changes made subsequent to the election of committeemen vacancies will be created in such new voting districts, and the voting strength of the committeeman elected in the new district and of those in the remaining precincts cannot be determined; that the provisions of section 30 of the Election law are mandatory, and that when changes in precinct lines occur it will frequently happen that a precinct made up of parts of two other precincts would, unless an election be provided, have no committeeman within its boundaries, and other cases would occur where the precinct newly created would have two committeemen, whereas the remainder of the two original precincts would have none, and that in any event there would be no method of telling the voting strength of the committeemen of the new districts, and the act is therefore open to the objection urged against the Primary law held invalid in *McAlpine* v. *Dimick,* 326 Ill. 240; and that paragraph (*f*) of section 10 of the act, providing that all precinct committeemen, when elected, shall serve as though elected at large, irrespective of any changes that may be made, and shall have the same voting strength through the period for which they are elected, is merely an attempt to evade the decision in the *McAlpine case.*

A perusal of the act discloses that no provision is made for the election or appointment, before the next regular

primary, of a committeeman in a new election district created by the act of the board of supervisors under section 30 of the Election law, and it seems apparent by the provisions of paragraph (*f*) of section 10 just referred to, that it is the purpose and intention of the legislature that the territory in which a committeeman is elected shall not, so far as party representation and government are concerned, be changed prior to the next primary election although new election districts are formed from parts of his precinct, and that, regardless of the creation of new polling districts by the board of supervisors, the committeeman shall act as the representative of his party for the territory in which he is elected, during the term of his incumbency. To illustrate: Assuming that precincts A and B adjoin, and from the territory of these there is created a third voting district by taking sufficient territory on either side of the boundary line between precincts A and B to create such district, so that out of the original territory of A and B three election districts are formed. Precinct committeemen were previous to such change elected in precincts A and B. While a third election district has been created out of the territory of precincts A and B, that territory and its population are the same, and it seems clear that the legislature intended that the committeemen elected in precincts A and B should act as representatives of their party in that territory for the period for which they were elected. Their voting power was fixed at the time of their election, and the intent of the Primary law clearly appears to be that such power should remain the same regardless of such change. This would also be true in cases where new voting districts are created from parts of more than two precincts. To such purpose no constitutional objection is seen. The creation of new voting districts under section 30 of the Election law is for the convenience of the voting public and for expedition in handling the returns. No reason appears why a committeeman of a political party may not represent the voters of

his party in the original territory for which he is elected. Although voting districts may be increased within the territory of the original precincts, each voter is represented in the voting strength of the committeemen as elected in such original precincts until the next primary election, when a committeeman is to be selected from the new election district. There is nothing in the Primary law requiring the doing of an act by committeemen, either separately or in convention, in which or concerning which such newly made voting district must be represented as a separate unit.

It is argued that under the above plan committeemen of precincts A and B, after such change, could not be held responsible to voters of the territory taken from their respective precincts by the formation of new election districts, and that such a situation is contrary to our theory of representative government. Those committeemen were elected to represent the members of their party in the original territory of precincts A and B for a period of two years, and there is no basis for assuming that they will violate that trust. A like situation arises in cases where congressional or senatorial districts are changed. The representatives in Congress or in the State legislature, or State senators, continue to represent the people of the district in which they are elected until the next congressional or senatorial election. No constitutional objection to such plan can be said to arise from this fact. Such a plan does not violate the principles of equality and freedom of elections provided by section 18 of article 2 and section 1 of article 7 of the constitution. It is apparent that it is not intended by the Primary law to have an intermediate election in the newly formed precincts, and there is no constitutional requirement that there be one. Such a plan is not an evasion of the rule in the *McAlpine case, supra.* The Primary law there considered provided that the voting strength of committeemen should be one vote, and one additional vote for each fifty votes, or major fraction thereof, cast in the precinct for

Governor at the last general election for that office. Elections for Governor occur once in four years, while committeemen were to be elected for a term of two years. No provision was made for the equal representation of newly made precincts, and it was held that by reason of the impossibility of determining in a new district the vote for Governor, the additional voting strength of committeemen elected in such new districts could not be determined, and such committeemen would therefore have but one vote as against many times that number in other like precincts not affected by change of boundaries. While it is evident that the changes made in the present Primary law were for the purpose of meeting the objection to the act under consideration in the *McAlpine case,* that fact is not an evidence of an attempt to evade the decision in that case.

It is next urged that the law violates section 18 of article 2 and section 1 of article 7 of the constitution in that it requires that in cities, villages and incorporated towns having a board of election commissioners the primary electors must be registered voters, while there is no provision in the Primary law or any other law for intermediate or other registration of voters in cities having a population of 200,-000 or more. Section 43 of the Primary law specifies certain requirements as to qualifications of the voters. It provides, in part, as follows: "In cities having a board of election commissioners, the following additional regulations shall be applicable: In such cities only voters, registered as herein provided, shall be entitled to vote at such primary. * * * In any such city having a population of 200,000 or more, and in any incorporated town, under the jurisdiction of such board of election commissioners the said registration books shall be revised three weeks preceding such primary under the direction of said board of election commissioners in the same manner as is now provided by law for intermediate registration in cities having boards of election commissioners, provided that when an inter-

mediate registration and revision is now provided for by law to be held within thirty days prior to such primary election then such intermediate registration and revision shall be the registration and revision for such primary election." (Laws of 1927, p. 477.) The legislature at the same session amended sections 3, 4, 5 and 17 of article 3 of the act known as the City Election law. (Laws of 1927, p. 443.) By these amendments provisions for registration are made applicable only to municipalities having a population of less than 200,000.

The general Primary law was signed by the Governor on July 6, 1927. The amendments to the City Election law just referred to were signed by the Governor on July 7, 1927. When an act is signed by the Governor after the first of July of the year in which it is passed it becomes a law and takes effect when signed. (*Board of Education* v. *Morgan*, 316 Ill. 143.) The Primary law therefore went into effect on the 6th day of July. It does not purport to provide a system of registration, but it was the apparent intention of the legislature to adopt by reference the law relating to registration as it existed when this law went into effect and to incorporate such law into the Primary law. This is not an unusual method of drafting legislation and has been frequently approved by this court. (*Hagler* v. *Small*, 307 Ill. 460; *Evans* v. *Illinois Surety Co.* 298 id. 101; *People* v. *Crossley*, 261 id. 78; 2 Sutherland on Stat. Const.—2d ed.—sec. 405.) The 18th clause of section 1 of the act concerning statutes (Cahill's Stat. 1927, p. 2431,) provides in relation to the construction of statutes: "The term 'laws now in force' and words of similar import, shall mean the laws in force at the time the act containing the words shall take effect." The general rule is, that an act which adopts by reference the whole or a portion of another statute adopts that statute or such portion as exists at the time of such adoption, and does not include subse-

quent additions or modifications of such statute so adopted unless it does so by express or strongly implied intent. (*Culver* v. *People,* 161 Ill. 89.) This rule applies only, however, where the adopting statute makes reference to a particular act by its title or other specific description or reference. Where the adopting statute makes no such particular reference but refers to the law relating to the subject treated, such adoption by reference will be regarded as including not only the law in force at the date of adopting the act, but also such law as in force when the action is taken or the proceeding is resorted to. (*Culver* v. *People, supra; Snell* v. *City of Chicago,* 133 Ill. 413; *Jones* v. *Dexter,* 8 Fla. 276; *Kugler's Appeal,* 55 Pa. St. 123; *Harris* v. *White,* 81 N. Y. 532; 2 Sutherland on Stat. Const.— 2d ed.—sec. 405.) Applying this rule, it will be seen that on July 6, 1927, when the Primary law went into effect, the law governing registration "as is now provided by law for intermediate registration," etc., was incorporated by reference into the Primary law. The laws relating to the subject of registration are to be found in the City Election law. The Primary act did not, however, specify any particular statute, and therefore, under the rule just stated, the adoption by reference of the law on registration included the City Election law pertaining to the subject of registration and any amendments thereto that might be thereafter adopted. The amendments of sections 3, 4, 5 and 17 of article 3 of the City Election law became a law on July 7, and are therefore to be included as incorporated in the Primary law by reference, so that as the Primary law now stands section 43 requires intermediate registration in cities of 200,000 or more, while the amendment of July 7 incorporated into the Primary law by reference does away with all registration in cities of 200,000 and more.

While it is the rule that in cases where two statutes are enacted during the same session of the legislature they should receive such construction, if possible, as will give

effect to each, as they are within the reason of the rule governing the construction of statutes *in pari materia,* since each is supposed to speak the mind of the same legislature, (*Hutchinson* v. *Self,* 153 Ill. 542; *State* v. *Archibald,* 43 Minn. 328; *Town School District* v. *School District,* 72 Vt. 451, 48 Atl. 697; 1 Sutherland on Stat. Const.—2d ed.— sec. 268;) yet where parts of one of such acts are inconsistent with and repugnant to parts of the other act, so that all parts of both acts cannot be reconciled, the later act must be taken as a repeal by implication of the inconsistent portions of the act first passed. (*People* v. *Crossley, supra; Holmgren* v. *City of Moline,* 269 Ill. 248.) An inconsistency plainly exists between the provision of the Primary law requiring intermediate registration in cities of 200,000, and the amendments of the City Election law incorporated into it which limit registration to cities, villages or incorporated towns of less than 200,000. This inconsistency renders it impossible that both provisions be carried out. The inconsistent provisions of the Primary law of July 6 must therefore be held to have been repealed by implication by the incorporated amendment of July 7, and the result is to limit the registration, and therefore the necessity for such registration on the part of the primary voter, to cities, incorporated towns or villages having a population of less than 200,000. So construed the law is not repugnant to the constitutional provisions invoked by the respondent.

It is also contended by respondent that paragraph (*b*) of section 9 of the law in question is invalid, in that it requires that in cities, villages and incorporated towns where registration of voters is required, precinct committeemen must not only be qualified but also registered voters. That paragraph, in so far as it relates to the question here, is as follows: "Each candidate for precinct committeeman must be a qualified (and in cities where registration is required, a duly registered) voter of and in the precinct where he seeks to be elected precinct committeeman." The deci-

sion of the point just considered disposes of this question. The candidate must be registered in those cities where registration is required, and under the view expressed in this opinion the Primary law as it now stands does not impose registration as a qualification for election on committeemen in cities of over 200,000, and therefore no such a requirement can be said to exist as to candidates for committeemen in such cities.

It is also contended that the Primary law is inconsistent and unworkable in this: Paragraph (*f*) of section 9 of the law provides that "the several committees herein provided for shall not have power to delegate any of their powers, or functions to any other person," while paragraph (*a*) of section 10 provides that the committeemen sitting in county convention shall choose delegates to the State convention of their party who shall nominate certain officers, and that in so providing the law requires that the committeemen in convention delegate their powers to other persons. Counsel have mistaken the discharge of a power for a delegation of such power. One of the powers and duties of the committeemen sitting in county conventions is to select delegates to the State convention. The selection of such delegates, therefore, is not a delegation of power but it is an exercise of that power. Committeemen, as such, have nothing to do with the duties of delegates selected by them, nor is it the intention of the law that the committeemen themselves shall be such delegates. They may be, but the law in nowise requires it. The act is not open to this objection.

It is also urged that section 11 of the Primary law is invalid. Section 11 provides for the nomination of candidates for aldermen in those cities which have adopted the law in relation to minority representation in the city council. That section also provides that in cities which have adopted such minority representation the municipal central

328—34

committee, which is composed of the precinct committee-
men representing the precincts of the city, shall, at least
sixty days prior to the date of the primary, determine and
fix, by resolution, the number of candidates for aldermen
in each ward in the city to be nominated by their party at
the primary for the nomination of city officers. It then
provides: "In all primaries for the nomination of candi-
dates for alderman under minority representation, each
qualified (minority) elector may cast as many votes for
one candidate as there are candidates to be nominated, or
may distribute the same, or equal parts thereof, among the
candidates for nomination as he shall see fit, and the candi-
date for nomination highest in votes shall be declared nomi-
nated." It is contended that this is invalid as violating the
clauses of the constitution insuring freedom of election, for
two reasons: First, under the language last quoted only a
member of a minority party may use the cumulative vot-
ing system; and second, that this section is not susceptible
of practical operation in any case where an election pre-
cinct lies partly within and partly without the boundary of
a city which has adopted the minority representation plan.
The municipal committeemen in such city are by the law
given the same voting strength as they have on the county
central committee, which is one vote for each vote cast at
the primary election at which the committeeman was elected.
The respondent therefore argues that under section 11, when
the municipal central committee meets to decide upon the
number of aldermen to be nominated, the committeeman
from a precinct lying partly within and partly without the
city has a voting strength arising not alone from the num-
ber of voters within the city who voted at the primary at
which he was elected, but from the entire number of votes
cast in the precinct at such election, though such votes were
cast partly by residents within and partly without the city.
The relator seems to concede that these objections are good
and that this section is invalid, but takes the ground that

its invalidity does not affect the balance of the Primary law, but that in such cities candidates for alderman may be nominated under the general provisions of the Primary law.

It seems apparent that section 11 affords privileges to the voter of a minority party in cities adopting minority representation that it does not afford to the voter of a majority party in such city. It is also impracticable of operation in that there is no method by which the voting strength of the municipal central committee is to be limited in all cases to a voting power derived from votes cast by voters living within the city. Section 6 of article 4 of the Cities and Villages act (Cahill's Stat. 1927, p. 311,) provides that cities may by a vote adopt the provisions of the act in relation to minority representation in the city council. Under this plan the city is to be divided into districts, and each district is entitled to three aldermen. The application of section 11 is limited to the nomination of candidates for alderman in cities which have adopted minority representation. It is apparent that the Primary law is not dependent upon these provisions for the validity of the balance of its sections. The respondent contends, however, that with section 11 out of the Primary law there is an inequality in the rights of voters and requirements as to nomination of candidates for alderman in cities adopting the minority plan when compared with other cities of the State. We are of the opinion, however, that the effect of the invalidity of section 11 is to remove the cumulative voting feature in primary elections and the method of determining the number of candidates in such cities as prescribed by the Primary law, and no reason appears why nominations for alderman may not be made under the general provisions of the Primary law and the number of candidates determined without reference to that law. This being so, the inequalities complained of do not, therefore, exist. The invalidity of section 11 cannot be said to render the entire law void.

It is also contended by the respondent that the law is invalid because of the provision of paragraph (*g*) of section 9 that the "political party committees now in existence are hereby recognized and shall exercise the powers and perform the duties herein prescribed until, but only until, committeemen are chosen in accordance with the provisions of this act." The argument is, that owing to the invalidity of the 1910 Primary law as determined in *McAlpine* v. *Dimick, supra,* there were, in fact, no committees in existence when this Primary law was passed, and the section referred to renders the whole law invalid because it attempts to validate the existing political party committees, while no such purpose appears in the title of the law. This position is untenable. This provision of the act is a designation of certain persons who were then acting as committeemen to be such until an election was held under the law. Even though it be said that there were no such committees provided by law at the time of the passage of the present Primary law, no reason is seen why the act may not designate certain persons to act as committeemen and thus maintain the *status quo* until such time as an election can be held under the law. The act does not purport to validate these committees, if such could be done, but is a designation of specified persons to act as committeemen until a new committee is formed. Such a provision does not violate any constitutional provision called to our attention, and this objection cannot be sustained.

It is also contended that the law provides an unequal manner of choosing delegates to State and county conventions, in that it provides by paragraph (*a*) of section 10 that in counties having a city of 200,000 or more the delegates from the city shall be chosen by precinct committeemen from the separate wards, while the delegates from the county outside the city shall be selected by the precinct committeemen of the precincts outside such city, as a unit. The objection is, that it does not require that the delegates

chosen by the city committeemen shall be residents of the city or that delegates chosen from the county outside the city shall be residents of such territory, but that all the delegates may come from a single precinct, town, city or village in the county. The provisions of paragraph (a) of section 10 complained of are as follows: "But in any county having within its limits any city having a population of 200,000 or over the delegates shall be chosen by wards, the precinct committeemen from the respective wards choosing the number of delegates to which such ward is entitled on the basis prescribed in paragraph (e) of this section, such delegates to be members of the delegation to the State convention from such county, and the precinct committeemen representing the precincts outside such city shall ballot as a unit in choosing the delegates to which such precincts are entitled on the basis prescribed in said paragraph (e)." Paragraph (e) of section 10 provides the basis of representation in the various counties and precincts. It will be noted that the delegates chosen by the committeemen of the various wards of the city are the delegates to which such wards are entitled, and in the country outside the city the delegates are those to which the precincts there included are entitled. This language clearly indicates that the delegates to the State convention from the city are to be residents of the city, while those from the country outside are to be residents of that territory. This objection is not tenable.

For the reasons herein given we are of the opinion that the provisions of the act other than those of section 11 are not open to the constitutional objections urged. As the only objections raised to the Legislative Primary law are those which depend upon the determination of the validity of the general Primary law for their solution, it follows that no valid constitutional objections to the legislative Primary law have been pointed out. It is the duty, therefore, of the county clerk to prepare notices and ballots and to do

all things necessary, as required by the law, to prepare for the primary election to be held in accordance with the law.

The writ of *mandamus* will therefore be awarded.

                                        *Writ awarded.*

DUNN, FARMER and THOMPSON, JJ., dissenting:

In our opinion the Primary law of 1927 violates section 13 of article 4, section 18 of article 2 and section 1 of article 7 of the constitution.

Section 13 of article 4 provides that no act hereafter passed shall embrace more than one subject and that shall be expressed in the title. The title is, "An act to provide for the making of nominations by, and the organization of, political parties." It expresses two subjects: the making of nominations by political parties and the organization of political parties. The mere expression of two subjects in the title does not make the act obnoxious to the constitutional prohibition, which is directed against the inclusion of two subjects in the act. If the act deals with only one subject and that subject is expressed in the title, the expression of another subject in the title may be rejected as surplusage and will not affect the validity of the act, but if the act embraces two subjects, both of which are expressed in the title, the whole act must be declared void. (*People* v. *Nelson*, 133 Ill. 565; *Sutter* v. *People's Gas Light Co.* 284 id. 634.) This act contains provisions on both of the subjects mentioned in the title. It not only provides a complete scheme for the nomination of candidates, but also enacts a complete system of political party organization. Section 8 declares the committees which shall constitute the central or managing committees of each political party, viz., a State central committee, a congressional committee for each congressional district, a county central committee for each county, a municipal central committee for each city, town or village, a precinct committeeman for each precinct. These are required to constitute the organi-

zation of every political party in the State. Section 9 provides that the State central committee must be composed of one member from each congressional district and for the election of a committeeman at the primary provided in the act. The State central committee must be composed of the members so elected and of no other person or persons. The committee is required to meet in the city of Springfield within thirty days after the election, organize by electing from its own number a chairman, and from its own number, or otherwise, such other officers as it deems necessary or expedient. The outgoing chairman of the committee is required, ten days before the meeting, to notify each member of the State central committee elected at the primary, of the time and place of such meeting, and in the organization and proceedings of the committee each committeeman shall have one vote for each ballot voted in his congressional district by the primary electors of his party at the primary at which he was elected. The congressional committee of each party in each congressional district must be composed of the chairmen of the county central committees of the counties composing the congressional district, except that in congressional districts wholly within the territorial limits of one county, or partly within two or more counties but not coterminus with the county lines of all such counties, the precinct committeemen of the party representing the precincts within the limits of the congressional district shall compose the congressional committee, and in the organization and proceedings of the congressional committees, composed in whole or in part of precinct committeemen, each precinct committeeman shall have one vote for each ballot voted in his precinct by the primary electors of his party at the primary at which he was elected. In the organization and proceedings of congressional committees, composed of the chairmen of the county central committees of the counties within such districts, each chairman of such county central committee shall

have one vote for each ballot voted in his county by the primary electors of his party at the last preceding April primary at which precinct committeemen were elected. Paragraph (*h*) of section 10 provides that a special meeting of any central committee may be called by the chairman, or by not less than twenty-five per cent of the members of such committee, by giving five days' notice to members of such committee in writing, designating the time and place at which such special meeting is to be held and the business which it is proposed to present at such special meeting. Thus it will be seen that the body of the act embraces both subjects mentioned in the title, and they were brought fully within the terms of the constitutional prohibition. It deals with two subjects, both of which are expressed in the title of the act. In such case the entire act must be declared void, as in that case the doctrine that if any subject is embraced in the act which is not expressed in the title the act is void only as to so much as is not expressed, can have no application. If two subjects are both embraced in the act and expressed in the title we cannot elect between them so as to preserve one and reject the other, but the entire act must fall by reason of being in contravention of the constitutional limitation. *People* v. *Nelson, supra.*

The opinion which is adopted states that the rule is that all matters may properly be included in an act which are germane to the title; that it is clear that the nomination of certain candidates under the Primary law involves, as a necessary preliminary step, the organization of the party machinery; that the organization of political parties as provided in the act is for the purpose of bringing about the nomination of candidates; that the law makes no provision for conducting general elections, managing campaigns or the discharge of other functions of political parties, and does not require that committeemen, when organized, shall do so, and it is said the only exercise of power referred to in the act which may not be said to be an act

directly in furtherance of the scheme or plan to nominate candidates is that mentioned in paragraph (*b*) of section 10, which is, "to adopt any party platform." The argument proceeds on the theory that two subjects may be included in the act if they are so related that legislation on the one subject affects legislation on the other and is necessary or convenient in carrying out the purposes of the other. This does not obviate the prohibition of the constitution, which is against the inclusion in one act of two subjects which are both mentioned in the title. The constitutional prohibition against more than one subject not being directed against the title but against the act itself, the question must be determined by the body of the act if it contains provisions on two subjects. If the title of an act fairly indicates the general subject and reasonably covers all the provisions of the act and is not calculated to mislead the legislature or the people, it is a sufficient compliance with the constitutional requirement. The generality or comprehensiveness of the title is no objection, provided the title is not misleading or deceptive and fairly directs the mind to the subject legislated upon. It is not required that the title should be either an abstract, a synopsis or an index of the contents of the act. If such were the case the title would have to be as comprehensive as the act itself, and that is not the object of the constitution. In determining whether a provision is embraced within the title of an act a liberal construction is to be given to the constitution, and unless the act contains matters having no proper connection or relation to the title it will not be void as to such matters. The constitution is obeyed if all the provisions relate to one subject indicated in the title and are parts of it or incident to it or reasonably connected with it. (*Burke* v. *Monroe County*, 77 Ill. 610; *People* v. *Nelson, supra; Ritchie* v. *People*, 155 Ill. 98; *Hudnall* v. *Ham*, 172 id. 76; *People* v. *McBride*, 234 id. 146.) This was said in reference to a case in which it was held that the title included a single

subject, and cannot be used as authority in this case, where, manifestly, the title on its face includes more than one subject. The act cannot be sustained on the ground that those provisions which provide for the organization of political parties are incident to or reasonably connected with the subject of making nominations by political parties, for the reason that the organization of political parties is no more incidental to the making of nominations than the making of nominations is incidental to the organization of political parties, and, both subjects being embraced in the act and expressed in the title, we cannot, as was said in *People* v. *Nelson, supra,* elect between them so as to preserve one and reject the other. The title on its face expresses two general subjects of legislation.

The statement in the opinion, however, that the organization of political parties as provided in the act is for the purpose of bringing about the nomination of candidates, and that the only regulations in the act concerning party organization are there for the purpose of bringing about the nomination of candidates, will be shown by an examination of the act to be incorrect. The State central committee, which is required to be the managing committee of each political party, has nothing to do with the primary election. The act imposes no duty on that committee in connection with the making of nominations. It fixes the number of members of the committee according to the number of congressional districts in the State and provides for the election of a chairman. The congressional committee composed as required by the act has no relation to the primary and no duties to perform under the act in connection with nominations, but is required to be constituted and organized as provided by the act, and its members have the voting strength provided by it. The act provides for special meetings of any central committee; that they may be called by the chairman or by not less than twenty-five per cent of the members of the committee; that five days' notice in

writing must be given of the time and place of the meeting and the business which is proposed to be presented at such special meeting. The districts in which committeemen may be elected, their number, their term of office, the manner in which meetings may be called, the notice required for such meetings, are all fixed by law. These provisions have no relation to the nomination of candidates but relate wholly to the organization, management, method of transacting business and the voting strength of the committee members, and cannot be said to be necessary, incident to or reasonably connected with the subject of making nominations but concern only the organization of political parties. The act clearly embraces two subjects, both in the title and the body of the act, and violates the prohibition of section 13 of article 4 of the constitution.

In *Rouse* v. *Thompson*, 228 Ill. 522, it was held that the power of the individual voter at the polls to cast his vote, untrammeled, for the candidate of his choice is no more sacred than the right of the individual member of a political party to express his choice for party candidates at a primary election, and such right cannot be taken away from him, even in the selection of a party candidate to fill a vacancy, under the guise of conferring such power upon a managing committee, or otherwise, without infringing upon his constitutional right to participate in a free and equal election as secured to him by the bill of rights.

In *People* v. *Fox*, 294 Ill. 263, section 10 of the Primary Election law of 1919 was held unconstitutional because it discriminated in the voting power of the different wards and districts in counties having a population of over 500,000 and between the power of committeemen in such counties and committeemen elected from the rest of the State. It provided that in the organization and proceedings of the county convention each precinct committeeman should have one vote and one additional vote for each fifty votes, or major fraction thereof, of his party cast in the precinct for

Governor at the general election then next preceding, and each ward or district committeeman should have one vote for each precinct in his ward or district and one additional vote for each 'fifty votes, or major fraction thereof, of his party cast in the county for Governor at the general election then next preceding. It was held that the section gave to small wards or districts an unequal, unbalanced and controlling power, destroyed the freedom and equality of elections and discriminated against electors similarly situated, in violation of section 18 of article 2 of the constitution. That section requires that all elections shall be free and equal, and this means that every qualified voter may freely exercise the right to cast his vote without restraint or coercion of any kind, and that his vote, when cast, shall have the same influence as that of any other voter. (*People* v. *Election Comrs.* 221 Ill. 9; *Rouse* v. *Thompson, supra; People* v. *Fox, supra.*) A law which provides for the holding of primary elections for the nomination of candidates for office regulates the form and contents of the ballot, and the method of choosing the candidates must conform to this requirement of the constitution. *People* v. *Election Comrs. supra.*

This statute is obnoxious to the same section of the constitution because it fails to make provision for filling vacancies in case of the death, resignation or removal of precinct or district committeemen. There is no provision in the act for filling such vacancies, and under the decisions which have been cited a failure to fill such vacancies would result in depriving the voters in the precincts in which vacancies existed of their right to participate in the nomination of candidates of their party. The opinion of the court seems to assent to this proposition, but meets it by holding that the county committee itself, representing the party, has an inherent power to fill vacancies on the committee by such means as it may adopt, the legislature not having made any different provision, and that it does not

necessarily follow that the voters of the party in the precinct in which a vacancy exists may not have a voice in filling such vacancy, as this can be done in any manner conformable to the rules, usages and practices of the party. It is not enough, however, that the voters may have a voice in the selection of the committeeman to fill a vacancy. It is essential that they have secured to them by the law the right to cast their votes freely and that such votes have the same effect as those of other voters. If conferring upon a central committee the power of selection of a party candidate to fill a vacancy in an elective office constitutes an infringement on the constitutional right of the individual voter to participate in a free and equal election of such candidate, as was held in *Rouse* v. *Thompson, supra,* why does not conferring the power on the central committee to select a committeeman in a precinct in which a vacancy exists who shall cast the votes of the precinct for the nomination of a candidate for an elective office equally infringe the same constitutional right of the voters of the precinct who have had no voice in the selection of the committeeman? If it be conceded, however, that the managing committee of a political party may adopt rules for the filling of vacancies on a committee, this applies only to voluntary organizations untrammeled by legislative or constitutional restriction. Such organizations, in the absence of regulations, may adopt such rules as they see fit, but when the legislature undertakes to provide by law for the manner of organization of a political party, the method of choosing its members and transacting its business, its legislation must be governed by an observance of constitutional limitations. In the form of government which it imposes on political parties and the action which it directs it must take care that the freedom and equality of elections are preserved. This act imposes a representative form of government on political parties. Party policy and party action are determined and controlled by a committee composed of

precinct committeemen. In the act care is taken to preserve equality in the effect of each individual's vote by providing that in the organization of the committee, and in all its proceedings, each precinct committeeman shall have one vote for each ballot voted in his precinct by the primary electors of his party at the primary at which he was elected. Thus, in selecting delegates to the conventions by which nominations are to be made, each committeeman represents the full voting strength of his precinct, and every vote in the county is as effectually represented as if cast by the individual voter and is counted and given the same effect as if so cast and has the same effect as every other vote. The delegates may be selected with reference to their attitude toward a particular candidate or slate of candidates, or toward a particular character of legislation, question of party policy or plank in the party platform. Whatever may be the question, if every precinct committeeman is present at the meeting and votes, the delegates will have been selected and every question will have been determined by the votes of the voters of the political party through their legally chosen representatives, in whose election each voter had a chance to participate. If a precinct committeeman fails to attend a meeting of the county committee or to participate therein for any cause, preventable or not, the voters of his precinct are not disfranchised,—they have merely failed, through their representative, to exercise their right of franchise. If, however, by death, resignation or other cause a vacancy has arisen in the position of precinct committeeman in any precinct and no method has been provided for filling the vacancy, the voters of the precinct are deprived of the opportunity to exercise their legal right of franchise. Having undertaken, by the representative system adopted by the act for the organization of political parties, to provide a method by which each voter shall have the opportunity to cast his vote freely upon all questions to be determined by the committee and the right to

have that vote given the same effect as every other vote,
if the act fails to provide a method by which, under all
circumstances, the voters of any precinct shall have the
right to cast their votes through their chosen representa-
tives, it fails to protect the right of the voters so situated
to cast the free and equal vote guaranteed by the constitu-
tion. The vacancy may have occurred the day after the
primary election by reason of the death of the precinct com-
mitteeman, and if no method of filling the vacancy is pro-
vided, the voters of the precinct will be deprived of all par-
ticipation in the proceedings of the committee of their
party for two years and until the holding of another pri-
mary election. It cannot be contended that the statute
would not be in violation of the free and equal right of suf-
frage if it expressly excluded from representation on the
committee and participation in its proceedings the voters
of any precinct in which a vacancy for any cause exists in
the position of precinct committeeman. This, however, is
the effect of the law if no method of filling vacancies ex-
ists. The precinct without a committeeman has no vote.
The same result would follow if the statute undertook to
declare that the chairman of the committee should have the
right to fill the vacancy by appointment or that the com-
mittee itself should fill the vacancy in any manner conform-
able to the rules, usages and practices of the party. The
appointee would then cast the vote to which the precinct
committeeman would be entitled, but the only theory un-
der which the law can be held constitutional is, that by
the election of a precinct committeeman, who has one vote
for each ballot cast at the primary, all the voters of the
party at the primary are represented and his votes represent
all the voters of his party in the precinct. To authorize a
person appointed by some authority having no connection
with the voters of the precinct to cast the vote to which
the precinct committeeman would be entitled, entirely dis-
regards the principle of representation, on which the act

is founded, and deprives the voters of the precinct of any participation in the proceedings of the party.

The opinion adopted impliedly admits that if there is no way to fill vacancies in the office of precinct committeemen the act is unconstitutional, but holds that, in case of a vacancy on the State or county committee, the committee may fill the vacancy in any way it may see fit by the exercise of its inherent powers. The New York case cited to support this proposition (*People* v. *Kings County Republican Central Committee,* 63 N. Y. App. Div. 63,) does not sustain it and is not at all in point. The committee which was a party to that case was a voluntary association, with whose organization, rules and methods of procedure the legislature had nothing to do, and in regard to such an association, only, it was held that it had the inherent right to adopt rules for the filling of vacancies caused by the death, resignation or removal of a member. The other cases cited are to the same effect—that in the absence of legislative enactment a political party is governed by its own uses and establishes its own rules. This doctrine is indisputable, but it is based on the absence of legislative enactment and has no application to a political committee regulated by statute, with a membership fixed by law, consisting of persons selected in the manner authorized by statute, each representing a definitely ascertained group of voters and deriving from that group of voters his power, the extent of which is measured by the number of such group who have voted at the election at which their representative was elected. It is contrary to the fundamental principles of justice and the theory of representative government, as well as to section 18 of article 2 of the constitution, that such a representative whose power is derived from an election by the voters of his precinct should be replaced, under any circumstances, by another person selected by a person, officer, board, commission, committee, organization or body of any kind wholly foreign to the precinct,

and that such person so selected should be permitted to exercise the powers conferred by law only on a representative selected by the voters of the political party in the precinct.

It is true, as stated in the opinion, that political parties were organized and in existence prior to the enactment of any statutory regulation of them. Such a party being voluntary, its members were bound by its usages and the rules which it established. It had the inherent right to adopt rules for its own government, and these were not required to be just and were not subject to be measured or judged by any judicial standard. The organization being voluntary, any person dissatisfied with the rules or usages of the party could withdraw from it, but he could not call upon the court to enforce such rules or usages or to enjoin their enforcement. He had no legal or constitutional rights as to such rules. If the legislature, however, has any power to establish the rigid system of organization of political parties provided by the statute under consideration, it is bound by the limitations of the constitution as to the freedom and equality of elections, and a system of representative voting which may under any circumstances deny the right of the voters of a precinct to cast their votes through a representative elected by themselves, and gives to a person selected by some person or persons other than themselves, as their representative, the right to cast their votes, is neither free nor equal.

Section 1 of article 7 of the constitution prescribes the qualification of electors and declares that every citizen of the United States above the age of twenty-one years, who has resided in the State one year, in the county ninety days and in the election district thirty days next preceding any election, shall be entitled to vote at such election. Section 43 of the act in question adds to these qualifications the requirement that in cities having a board of election commissioners only registered voters shall be entitled to vote at the primary election. It further enacts that in any

such city having a population of 200,000 or more, and in any incorporated town under the jurisdiction of a board of election commissioners, the registration books shall be revised three weeks preceding the primary under the direction of the board of election commissioners, in the same manner as is now provided by law for intermediate registration in cities having a board of election commissioners, provided that when an intermediate registration and revision is now provided for by law to be held within thirty days prior to any election, then such intermediate registration and revision shall be the registration and revision for the primary election.

Sections 3, 4, 5 and 17 of article 3 of the City Election law provided for a general registration of voters in every year in which a congressional election occurs, and just prior thereto, in all municipalities having a board of election commissioners, and for an intermediate registration within thirty days prior to any election. The Primary law was signed by the Governor on July 6, 1927, and became effective on that day. (*Board of Education* v. *Morgan,* 316 Ill. 143.) Sections 3, 4, 5 and 17 of the City Election law were amended by the legislature at its session in 1927 so as to make the provisions for registration applicable only to municipalities having a population of less than 200,000. This act was signed by the Governor on July 7 and became effective on that day, so that the law providing for the registration of voters was repealed so far as cities having a greater population than 200,000 were concerned, and thereafter no law for the registration of voters in such municipalities existed, though such law remained in force in all cities of 200,000 population or less having a board of election commissioners. The requirement of the law that voters at the primary election shall be registered voters applies to all cities having a board of election commissioners. The repeal of the law providing for the registration of voters in municipalities having a population of 200,000

or more renders the application of the Primary law equally throughout the State impossible, for in cities of less than 200,000 population only registered voters are qualified to vote, while in cities having a greater population than 200,-000 voters are not required to be registered.

The majority opinion answers this objection by holding that the amendment of the City Election law limiting the registration of voters to municipalities having a population not exceeding 200,000 is inconsistent with the provision of the Primary law that only registered voters shall be entitled to vote at the primary, and therefore repeals that provision of the Primary law. The doctrine of repeal by implication is not, however, applicable to this condition. That doctrine is, that where two acts on the same subject are repugnant to each other the later act repeals by implication the inconsistent provisions of the other. The rule is, however, subject to the limitation that the two statutes must be upon the same subject and enacted for the same purpose. It is necessary to the implication of a repeal that the objects of the two statutes are the same, in the absence of any repealing clause. If they are not, both statutes will stand though they may refer to the same subject. (*United States* v. *Claflin,* 97 U. S. 546.) Where there is a difference in the whole purview of two statutes apparently relating to the same subject the earlier is not repealed by the later. (*Pacific Elevator Co.* v. *Portland,* 65 Ore. 349.) When the conditions which an act is intended to meet are different from those for which a former act provides, the earlier act is not repealed. (*Delken* v. *Freeholders of Atlantic,* 90 N. J. L. 473.) In the case of *Rawson* v. *Rawson,* 52 Ill. 62, this court announced and applied the doctrine that the fact that there may be an inconsistency between a later and an earlier act of the legislature does not justify the conclusion that the later repeals the earlier by implication, where the two acts are not on the same subject and were not passed for the same purpose, and that a subsequent act on the

same subject will not be held to repeal a former act by im-
plication unless the new act contains provisions positively
repugnant to those of the former act. The act of July 7
is limited by its title to the amendment of sections 3, 4, 5
and 17 of article 3 of "An act regulating the holding of
elections and declaring the result thereof, in cities, villages
and incorporated towns in this State," (the City Election
act,) while the subject of the Primary act is limited to the
making of nominations by and the organization of political
parties. The former act is limited to the subject matter of
the sections mentioned in the title and cannot be extended
to include any subject not germane to those sections. It
could not expressly repeal the provision of the Primary act
requiring voters to be registered. To do so would be to
include matter not embraced in the title of the act, and such
matter would be void as violating section 13 of article 4 of
the constitution. If it could not expressly repeal this pro-
vision it certainly could not do so by implication. The
legislature could not, therefore, on account of the constitu-
tional limitation, amend the Primary act by the act to amend
sections 3, 4, 5 and 17 of the City Election act, and even
if it could do so the question would be one of legislative
intention. There is nothing in the amended sections of the
City Election act approved July 7 which indicates that the
legislature had any intention of amending the Primary act
approved July 6. Both acts were passed at the same ses-
sion, and this is persuasive evidence of the intention of the
legislature to have both acts effective in all their provisions.
The legislature required by the Primary act that the voters
at the primary election be registered voters, and to say now
that the Primary act shall be sustained and put into effect
without any provision for registration of voters in the city
of Chicago, with its 3,000,000 people, is to declare that to
be the law which the legislature has said shall not be the
law. It cannot be presumed that the legislature would have
required registration in the smaller cities of the State and

would have excluded from the requirements of the act the city of Chicago, which has substantially half the voters of the State. It is clear that the legislature had no such intention, and it should be held that the law is incomplete and therefore ineffective.